IN RE APPLICATION OF BASIN TRUCK COMPANY, A
CORPORATION.
BASIN TRUCK COMPANY, APPELLEE, V. R. B. "DICK"
WILSON, INC. OF NEBRASKA, ET AL., APPELLANTS.
90 N. W. 2d 268

Filed May 23, 1958. No. 34346.

*Viren, Emmert, Hilmes & Gunderson* and *Robert S. Stauffer,* for appellants.

*Nelson & Harding,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

The Basin Truck Company filed its application with the Nebraska State Railway Commission on April 2, 1957, to obtain a certificate of public convenience and necessity authorizing it to transport crude oil and sand-frac oil in bulk in tank trucks between points and places in Nebraska. Formal protests were filed by three common carriers of these products, two of whom, Earl Houk and R. B. "Dick" Wilson, Inc. of Nebraska, are the appellants on this appeal. The commission granted the application on June 4, 1957, and overruled appellants' motions for a rehearing on September 23, 1957. This appeal was taken from the orders thus entered.

The Basin Truck Company, at the time its application was made, was operating in Colorado. It held a certificate to operate intrastate in Colorado and a certificate to operate interstate from the Interstate Commerce Commission. That it has the equipment, facilities, and necessary finances to render the proposed service of transporting crude oil and sand-frac oil in Nebraska is established by the record. The basic issue is whether or not the present and future public convenience and necessity require the service proposed by the Basin Truck Company and, as a corollary thereto, whether or not the order of the commission granting the application

was arbitrary and unreasonable under the evidence adduced at the hearing before the commission.

The certificate granted to Basin Truck Company authorized it to transport crude oil and sand-frac oil between points in Nebraska. The transportation of crude oil consists of hauling crude oil from producing wells to storage tanks at pipeline stations. The applicant produced several large purchasers of crude oil, each of whom was charged with the responsibility of moving from 1,300 to 7,500 barrels of crude oil per day to pipeline stations. Their evidence was to the effect that it was necessary to have two or more carriers available to move crude oil from wells to pipeline stations. It was pointed out that storage capacity at wells was limited and that a failure to promptly remove the crude oil purchased would cause a shut-down of pumping operations and a resulting loss to sellers of oil at the wells. It was further pointed out that bad roads and weather conditions were contributing factors in determining the number of carriers and the quantity and quality of equipment required to provide the necessary service.

The evidence further shows that the hauling of crude oil from the oil wells to pipeline stations was determined to be intrastate and not interstate commerce shortly before the instant application was filed. This had the effect of making the transportation of crude oil available to intrastate rather than interstate carriers as theretofore. The record shows also that the certificate of W. W. Beckley, a hauler of crude oil in the area, was recently revoked. This increased the volume of crude oil transportation available to other intrastate carriers. An additional fact properly to be considered by the commission is the expansion and development of oil fields in western Nebraska.

The evidence shows that Basin Truck Company is equipped to handle sand-frac oil. This operation is described as the hauling of crude oil, refined oil, or other oil products used under high pressure as a hydraulic

fluid to fracture underground formations to stimulate the oil flow into the wells. The number of wells requiring fracturing operations is on the increase due to more wells being drilled and the falling off of production in the older ones. It is estimated that there were 20 sand-fracing jobs per month in this area during the 6-months period prior to the hearing before the commission. The representative of the company performing this work testified that prompt deliveries of sand-frac oil are required in the prosecution of this type of work. It requires special equipment for the hauling of oil for this purpose. Refined sand-frac oil is available only at Scottsbluff in Nebraska and the evidence is that trucks have not always been available at that point to transport this commodity as needed. At times sand-frac oil has been hauled from without the state by interstate carriers to afford the needed service. The evidence further shows that the number of intrastate carriers engaged in hauling sand-frac oil is very limited and that a definite need exists for intrastate haulers of this commodity.

The evidence of the appellant, R. B. "Dick" Wilson, Inc. of Nebraska, whom we shall hereafter refer to as Wilson, is that it has operated in Colorado for several years under interstate and intrastate certificates. It obtained intrastate rights in Nebraska by purchase from one Ray Peake who is the manager of Wilson in Nebraska. The evidence shows that equipment is available to Wilson to transport crude oil and sand-frac oil in Nebraska by leasing equipment belonging to Wilson of Colorado and Peake in Nebraska. Wilson maintains terminals at Chester, Geneva, North Platte, and Sidney in Nebraska. Wilson has transported all commodities tendered to it in Nebraska. It has not transported any sand-frac oil since 1955. It was not transporting crude oil during the year 1957. No additional equipment was moved into the area where crude-oil hauling exists after it was determined to be intrastate in character. There is

no equipment at Sidney available which is suitable for handling crude oil. The testimony of Peake is that Wilson is ready, willing, and able to provide all necessary equipment to handle the business. It is apparent, however, that Wilson has no established business for hauling crude or sand-frac oil in western Nebraska.

The evidence of the appellant Houk is that he has been engaged in the transportation of petroleum and petroleum products in bulk in tank trucks at Scottsbluff since 1934. He holds state and interstate certificates authorizing the carrying on of this business under the name of Western Nebraska Transport 'Service. Since the beginning of oil production in western Nebraska he has engaged in hauling crude oil as a common carrier. He testified that he has more equipment than is presently necessary to handle the current volume of business. He stated that he is equipped to transport sand-frac oil and that he had been hauling this commodity whenever it was tendered to him. Houk is shown to be financially able to purchase any additional equipment that may be needed which he does not already possess.

The record shows that there are other common carriers in western Nebraska who are engaged in hauling crude oil who are not protesting the instant application. No complaint is made as to the service rendered by any common carrier of crude or sand-frac oil when it undertook to transport these products. The question is: Was there a public need for the service applied for and was the commission acting unreasonably and arbitrarily when it determined from the evidence that a public need existed.

The Nebraska State Railway Commission has original jurisdiction and sole power to grant common carrier certificates of public convenience and necessity. On an appeal to the Supreme Court from an order of the commission granting such a certificate the only questions to be determined are whether or not the commission acted within the scope of its authority, and whether or

not the order complained of is reasonable and not arbitrarily made. Houk v. Peake, 162 Neb. 717, 77 N. W. 2d 310. The jurisdiction of the commission is not questioned.

In determining the issue of public convenience and necessity, the controlling questions are whether or not the proposed operation will serve a useful purpose responsive to a present or future public need, whether or not this purpose can or will be served as well by existing common carriers, and whether or not it can be provided by the applicant in the manner specified without endangering or impairing the operations of existing common carriers contrary to the public interest. The primary purpose of commission control is to secure adequate sustained service for the public at a minimum cost and to protect and conserve investments already made for such purpose, and, in doing so, primary concern is that of the public rather than that of individuals. Houk v. Peake, *supra.*

It is not the purpose of commission control to establish an unbridled monopoly by the elimination of fair competition, nor is it intended to create unfair or destructive competition resulting in inadequate service to the public. It is a regulated competition, productive of efficient service at a minimum cost, operated for reasonable profit in the interest of public users of the service, without endangering or impairing the operations of certified common carriers in the field, that meets the objectives of commission control.

Included in the evidence before the commission is the testimony of representatives of eight large users of the common-carrier service here in question, to wit: British American Oil Producing Co., Toronto Pipeline Co., M & M Oil & Transportation, Inc., Pure Oil Co., Indiana Oil Purchasing Co., Ohio Oil Co., Dow, Incorporated, and Western Crude Marketers, Inc. The general tenor of this evidence is that several common carriers of crude oil and sand-frac oil are needed to meet

the requirements of the industry. They support the application of Basin Truck Company on the basis of public need. Each of these users of this common-carrier service moves from 1,300 to 7,500 barrels of crude oil each day, most of which is by tank trucks. The necessity for prompt, safe, and efficient service in the handling of these commodities is made apparent from their evidence. They constitute some, if not most, of the users of this common-carrier service. None of them complained of the manner of handling by any carrier in the field. They testified only that there are not enough carriers and equipment available to transport the crude and sand-frac oil with the dispatch and efficiency that their business requires.

We think the evidence before the commission in the instant case raised questions of fact that were for the commission to decide. The commission found that a public need for the common-carrier service applied for did exist. There is competent evidence in the record to sustain such a finding. While it is true that there is evidence on the part of the appellants in conflict with that of the applicant, such conflict is for the commission to resolve, and not this court. Since there is competent evidence in the record to sustain the commission's order, we cannot say that it is unreasonable and arbitrary. Dalton v. Kinney, 160 Neb. 516, 70 N. W. 2d 464; Johnson v. Peake, 163 Neb. 18, 77 N. W. 2d 670; and Ferguson Trucking Co., Inc. v. Rogers Truck Line, 164 Neb. 85, 81 N. W. 2d 915, appear to control the factual situation existing in the present case. In the last case cited this court used language particularly applicable to the present case. We there said:

"That finding is within the jurisdiction of the commission's power and duty. It made the finding. The record sustains it. It is not for us to set it aside.

"Finally, protestants contend that the order of the commission must be set aside for failure to give consideration to the effect of the grant of the application

upon the service of existing carriers. Such consideration is inherent in the order of the commission. Obviously the grant of the certificate to the applicant and its entry into competitive service might well be determined by the commission to be the cause of protestants improving a service which the commission could find from the evidence was not entirely satisfactory.

"The declared policy of section 75-222, R. R. S. 1943, is, in part, to regulate transportation 'in the public interest,' and to promote 'efficient service' without 'undue preferences or advantages, and unfair or destructive competitive practices.' "

The order of the commission is affirmed.

AFFIRMED.