In re Application of Arthur G. Miller, doing business as Miller's Transfer.
Arthur G. Miller, doing business as Miller's Transfer, Minden, Nebraska, appellee, v. Consolidated Motor Freight, Inc., et al., appellants.

97 N. W. 2d 265

Filed June 19, 1959. No. 34573.

*Viren, Emmert, Hilmes & Gunderson,* for appellants.

*Robert E. Powell,* for appellee.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Messmore, J.

Arthur G. Miller, doing business as Miller's Transfer, appellee, hereinafter referred to as Miller, filed an ap-

plication with the Nebraska State Railway Commission, hereinafter referred to as the commission, on March 6, 1958, wherein Miller sought an extension of his regular route certificate of public convenience and necessity authorizing the transportation of commodities generally, except those requiring special equipment, other than refrigeration, between Minden and Hastings, Nebraska, over certain specified routes set forth in his application. By this application Miller sought to serve two additional towns, Minden and Heartwell, as a regular route common carrier by motor vehicle.

On May 27, 1958, Consolidated Motor Freight, Inc., of Hastings, Nebraska, and Burlington Truck Lines, Inc., of Galesburg, Illinois, appellants, hereinafter referred to as protestants, filed a formal protest objecting to the granting of the application of Miller.

On July 1, 1958, an examiner for the commission filed a report with the commission wherein he recommended that Miller's application be granted in its entirety.

On July 7, 1958, the protestants filed exceptions to the examiner's report and recommendation.

On July 28, 1958, oral argument on the objections filed by the protestants to the examiner's report and recommendation was had before the commission.

On August 1, 1958, the commission entered its order sustaining the exceptions filed by the protestants to the examiner's report, overruled the examiner's report, and denied Miller's application in part.

On September 8, 1958, Miller filed a "motion for rehearing and reconsideration" of the commission's order entered August 1, 1958.

On September 9, 1958, a motion for rehearing of the commission's action of August 1, 1958, was filed by the protestants.

On September 24, 1958, the protestants made request in writing that their motion for rehearing filed under date of September 9, 1958, be withdrawn. This request was granted by the commission.

On September 22, 1958, hearing was had on Miller's motion for rehearing and reconsideration before the commission.

On November 11, 1958, the commission issued its order in which it sustained Miller's motion for reconsideration, vacated and set aside its prior order dated August 1, 1958, approved the examiner's report as previously referred to, and granted Miller's application in its entirety.

The protestants predicate error on the following: The commission's order of November 11, 1958, sustaining Miller's motion for reconsideration was unlawful, null, and void for the reason that the commission had no jurisdiction to sustain motions for reconsideration.

The protestants, in addition, set forth several assignments of error. However, for the purpose of this appeal, these assignments of error may be summarized as follows: The commission erred in failing to consider or determine the adequacy of existing service being offered or rendered by existing regular route carriers in the area involved in the application; and the commission erred in authorizing the issuance of a certificate of public convenience and necessity to the applicant Miller in that the action of the commission in this respect was arbitrary, unreasonable, contrary to law, and not sustained by competent probative evidence.

With reference to the protestants' assignment of error relating to the jurisdiction of the commission to sustain Miller's motion entitled "motion for rehearing and reconsideration," the protestants make reference to Article IV, section 20, of the Constitution of this state, which provides in part: "There shall be a State Railway Commission, * * *. The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law."

Protestants direct attention to section 75-406, R. R. S. 1943, which provides in part: "The procedure to ob-

tain such reversal, modification, or vacation of any such order or regulation made and adopted, upon which a hearing has been had before the State Railway Commission, shall be governed by the provisions in force with reference to appeals from the district courts to the Supreme Court of Nebraska; Provided, no motion for a new trial shall be required to be filed, but instead a motion for rehearing shall be filed * * *."

In the case of In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d 418, it was said: "In conformity with the constitutional provision, the legislature has the right to prescribe how the Nebraska state railway commission may proceed and what authority it may exercise in granting certificates of public convenience and necessity for operation of motor vehicles for hire intrastate." See, also, In re Application of Neylon, 151 Neb. 587, 38 N. W. 2d 552; R. B. "Dick" Wilson, Inc. v. Hargleroad, 165 Neb. 468, 86 N. W. 2d 177.

The protestants argue that without taking any additional evidence the commission, arbitrarily and without any reasons therefor, reconsidered the action previously taken by it in which it made a finding that the evidence did not warrant the granting of a certificate of public convenience and necessity to Miller, then, as heretofore pointed out, subsequently the commission determined that the evidence taken before the examiner did warrant the granting of a certificate of public convenience and necessity as prayed for by Miller in his application filed with the commission; and that section 75-406, R. R. S. 1943, contemplates a rehearing, and not a reconsideration, for the reason that section 75-405, R. R. S. 1943, in effect, provides that if any railway company, common carrier, or person affected thereby, shall be dissatisfied with the decision of the commission affirming, revising, annulling, or modifying any decision of the commission, the common carrier or person affected may institute proceedings in the Supreme Court to revise, vacate, or modify the order complained of. Therefore,

in consideration of sections 75-405 and 75-406, R. R. S. 1943, there is a jurisdictional defect, and the commission is without authority to reconsider its action as it did in the instant case.

Section 75-225, R. R. S. 1943, reads in part as follows: "Jurisdiction is hereby conferred upon and vested in the State Railway Commission, and it shall be its duty * * * (3) to administer, execute and enforce all other provisions of said sections, to make all necessary orders in connection therewith, and to prescribe rules, regulations and procedure for such administration, *except that proceedings before the commission,* appeals to the Supreme Court, and the enforcement of orders by the commission shall be governed in all respects by sections 75-401 to 75-423; * * *." (Emphasis supplied.)

Section 75-415, R. R. S. 1943, relates to orders of the commission, what such orders shall contain, how they shall be prepared and served on the parties of interest, and when such orders shall become effective.

Section 75-416, R. R. S. 1943, provides in part: "The order or orders provided for in sections 75-412, 75-413 and 75-415 shall be in force and effect from and after the date fixed by the State Railway Commission, and shall so remain until annulled, modified or revised by the commission, or until finally adjudged to be unreasonable and unjust in a court of competent jurisdiction, * * *."

In the case of Airline Ground Service, Inc. v. Checker Cab Co., 151 Neb. 837, 39 N. W. 2d 809, this court said: "Under the provisions of section 75-416 the order takes effect from the time prescribed and continues in force for the time specified unless the order is annulled, revised, or modified by the commission, or set aside by a court of competent jurisdiction."

The applicant in the instant case, as previously stated, filed a motion entitled "motion for rehearing and reconsideration" in which the applicant prayed the commission to reconsider its action previously taken as

shown by its order dated August 1, 1958, to vacate and set aside such order, and to approve the examiner's report. This is exactly the action the commission took. The applicant was not appealing from any decision of the commission to a higher court. The commission still retained jurisdiction over the subject matter of the entire proceedings.

We are unable to find any statutory provision which specifically prohibits the commission from reconsidering any action it may have taken on any orders that it may have previously issued, especially so under the circumstances as shown in the instant case. We conclude that the protestants' assignment of error is without merit.

This brings us to the protestants' other assignments of error above set forth. In this connection, the following are applicable.

In the case of Basin Truck Co. v. R. B. "Dick" Wilson, Inc., 166 Neb. 665, 90 N. W. 2d 268, it was held: "On an appeal to the Supreme Court from an order of the Nebraska State Railway Commission granting a certificate of public convenience and necessity, the only questions to be determined are whether or not the commission acted within the scope of its authority, and whether or not the order complained of is reasonable and not arbitrarily made." See, also, Houk v. Peake, 162 Neb. 717, 77 N, W. 2d 310.

"The burden is on an applicant for a certificate of convenience and necessity to show that the operation under the certificate is and will be required by the present or future public convenience and necessity." Houk v. Peake, supra.

"In determining the issue of public convenience and necessity, controlling questions are whether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by applicant in a specified manner without endangering or impairing the operations of existing car-

riers contrary to public interest." Canada v. Transit, Inc., 154 Neb. 256, 47 N. W. 2d 507. See, also, Moritz v. Transcontinental Bus Lines, Inc., 153 Neb. 206, 43 N. W. 2d 603.

For convenience, the protestant Consolidated Motor Freight, Inc., will be referred to as Consolidated.

The record discloses that Miller owns and drives a commercial truck, and holds authority from the commission to engage in this type of business. He testified that he purchased this authority a little over a year prior to the hearing before the examiner, which occurred on June 2, 1958, and has been conducting operations under this authority since that time. Miller operates a 1957 Ford van with an 18-foot box, and would not need to add new equipment if his application was granted. Miller conducts all of his business from his home in Minden, and his wife keeps his books. He does not advertise in the Minden directory, but maintains a telephone in his residence. At Hastings he interlines with all trucks, and docks at the Interstate Freight Lines terminal free of charge. Interstate Freight Lines takes his telephone calls. He has been performing truck service on a regular route basis 6 days a week, and performs on irregular authority occasionally, on a call and demand basis. Miller leaves Minden between 6:30 and 7 a.m., each morning, and arrives at Hastings between 8 and 8:30 a.m. He leaves Hastings between 11:30 and 11:45 a.m., and normally returns to Minden between 2:30 and 4 p.m., the same day. He testified that he has had quite a number of requests during the past year from various shippers at Minden and Hastings to pick up freight for them; that the particular reason he is requesting authority to serve Minden on a regular route basis is because of the call and demand for freight service; that the towns on the east end of his route are small and there is not enough freight moving to enable him to make a living; that in the event his application is granted he could serve Minden on a regular

route basis which would benefit him financially; and that he intends to operate generally on the same schedule between Minden and Hastings as he has previously operated. He would continue to make pickups at various terminals at Hastings. The granting of the application would result in one round-trip between Minden and Hastings on approximately the same schedule as heretofore set forth, and would enable Miller to eliminate 18 deadhead miles per day and to operate over better highways and roads than those over which he presently operates.

C. G. Lehmkuhl testified that he is engaged in the retail hardware and furniture business in Minden and has been so engaged for 25 years. He obtains supplies from Hastings, Omaha, and Lincoln. He gets very little furniture from within the state. Most of his hardware comes from Omaha and Hastings, and some from Lincoln. He carries 1,500 items of hardware in his store, which come from Omaha and Hastings. In intrastate shipments, he tries to control how the items he needs are to be delivered. In obtaining commodities from Omaha and Hastings, he uses mostly motor carriers, and once in a while shipments come by rail. With reference to Hastings, he would like to have commodities coming from there delivered the next day. He further testified that his store probably carries the largest inventory of miscellaneous merchandise in Minden; that on shipments originating in Omaha and destined to Minden, he usually routes them by Interstate Freight Lines so they can be brought to Minden by Miller; that he has one account in Hastings from which he gets many commodities, and this firm has instructions to give this business to Miller if possible, for the reason that the same day delivery out of Hastings is definitely of assistance to him; that the need for such shipments occurs quite frequently; that Consolidated brings commodities to him quite frequently; and that he has also received goods from the Red Ball Truck Company, and it is

possible that he has received goods from Buckingham Freight Lines and also from the Burlington Truck Lines out of Omaha. He gains 1 day by using Interstate Freight Lines and Miller out of Omaha. That is important because he handles many items, and there is always some item short, and the quicker he can get it, or other items, the better and more satisfactory it is for his business. It would be an advantage if Miller could supply daily service from Hastings, because his timing is such that if this witness knew something was wanted in the morning, he could receive delivery of it in the afternoon. He had been unable to get that kind of service from Consolidated because their timing was such that their truck left Hastings too early. Consequently, he would lose a day in the delivery of commodities by using Consolidated. He would make use of Miller's service, and the same would be beneficial to him. Previously he used the service of the Vannier Truck Line, but this service was discontinued. Vannier offered the same type of service that Miller proposes, which was satisfactory and desirable, and he preferred this type of service to that presently furnished by Consolidated.

John G. Oder testified that he is engaged in the business of running a Ford dealership known as Pioneer Motor Company in Minden. In Nebraska, he buys automotive parts and accessories which are delivered by truck, and these items come mostly from Hastings. He tries to direct the routing on shipments which come from Hastings. On this type of service, he prefers Miller's Transfer for the reason that if he calls for parts in the morning, he will have them delivered to him at Minden in the afternoon. This service is essential to his business for the reason that if there is a broken-down automobile in the shop and parts are needed for it, he wants to get those parts as soon as possible. Consequently, he would use Miller's service, and would continue to use Consolidated service as occasion for its service might be required. He further testified that in the past

there was daily service out of Hastings furnished by Bert Vannier. Vannier and some other lines consolidated, and the service that he had been getting from Consolidated since the merger or consolidation was not the same type of service he obtained from Vannier. It is an advantage to him to have 6-day service, as his business is open Saturdays until 9 p.m.

Lester Nelson testified that he is employed as manager of the Farmers Union Oil Company which operates a bulk plant and service station. This business is located in Minden. It sells gas, oil, tires, tanks, hoses, and about every item a farmer needs. This business gets all of its tires from Hastings, also small automotive parts like radiator hoses, tire patches, and other items of similar nature. He prefers Miller for delivery service, particularly in the tire line, for the reason that there are many sizes of tires on the market and his company is forced to carry a large inventory of tires. If Miller could render daily service, he could often obtain such merchandise as he might need by the middle of the afternoon, and by reason thereof could reduce his inventory on tires. In the past he used the service of Bert Vannier, which was very good. He would like to have the same type of service put in operation now, and he knew of no carrier but Miller who could give that kind of service, that is, delivery the same day out of Hastings.

Raymond S. Hendricks testified that he is an automobile repairman engaged in such business in Minden. His work principally consists of straightening automobile bodies, painting cars, installing glass, and fixing wrecked car bodies. He obtains various commodities such as glass, car parts, and fenders from Hastings. He does not carry much of an inventory. He uses Miller's service when possible, and has used such service on emergency shipments. This witness previously used the Vannier service, which was satisfactory, and he

would like to have the same type of service restored at this time.

Clarence Bauer testified that he lives in Minden, runs a garage, and distributes automotive parts. He has engaged in this business since 1931. He obtains most of his supplies from Hastings and Omaha. He has used the service of Consolidated from Hastings. He prefers Miller's service on account of the convenience, and because he can obtain delivery from Hastings the same day. Such service is a necessity to his business, because he has emergency calls for automotive parts quite often. If he is unable to supply these parts, customers usually go to other towns to obtain such service. Prior to a couple of years before this hearing, he used Vannier's service nearly every day, and would like to have that type of service restored again. He would use Miller's service, and would also use Consolidated service because it hauls parts and appliances for his business.

Arthur Jeppson testified that he is a well driller who drills wells and repairs pumps and windmills. He often obtains his supplies from Omaha, Beatrice, Hastings, and sometimes from Grand Island. He has used the service of Consolidated from Omaha to Minden. Such service is a little bit later, and he would not get the items that he needed until the following day, whereas if he could use Miller's service he could get the items the same day in the afternoon. He used Vannier's service, which was very satisfactory. He would like to have the same type of service available now, and would use such service if it was available. He would make use of Miller's service out of Hastings.

Alfred Ivor Petersen testified that he lived in Minden and was the manager of the Glantz Manufacturing Company. The business of the company is primarily the manufacture of mechanical hand tools which are shipped to many points in the United States. In shipping, this plant uses both motor carrier and rail services out of Minden. He was acquainted with Consolidated, and used

its service for moving commodities. He testified that such service was satisfactory.

Paul A. Warp testified that he lived in Minden and operated the Warp Publishing Company, engaged in publishing and distributing educational books. In the distribution of these books, he shipped by using motor carrier and rail service in and out of Minden. He was acquainted with and used the services of Consolidated, and found this service satisfactory. He testified further that there was no need for different or additional service, insofar as his operation was concerned.

John Bowman testified that he was the secretary-treasurer of Consolidated Motor Freight, Inc.; that it has been engaged in the transportation business approximately 2½ years; that it was a consolidation of a number of companies, namely, Hastings Transfer Company, Overnight Express Company, and Vannier Transfer; and that the present Consolidated Motor Freight, Inc., holds authority to operate between Omaha and McCook, serving all intermediate points between Lincoln and McCook, including Grand Island and Hastings. This service operates on a schedule basis. It owns 8 pick-up and delivery trucks, 12 tractors, 8 of which are over-the-road tractors, and 15 semi-trailers, and provides daily service to and from Omaha and Lincoln, except on Saturday. A tractor-trailer unit leaves Hastings at 4:30 a. m., goes to McCook, and returns to Hastings. At 6 o'clock every morning a tractor-trailer unit leaves Hastings for Minden and Holdrege and return. At 8:30 a. m., a tractor-trailer unit leaves Hastings for Lincoln and return. At 10:30 a. m., a tractor-trailer unit leaves Hastings for Grand Island and return. At 2:30 p. m., the first unit goes out of Hastings for Omaha; at 3:30 p. m. the second unit leaves; and at 5:30 p. m. the third unit leaves. From Omaha west, the units leave Omaha in the evening and arrive at Hastings during the night. He further testified that Consolidated previously conducted service similar to that of Vannier, but discon-

tinued the service because of lack of volume of business. Consolidated would restore the same service if the volume of business would warrant it, and was willing to furnish such service, if requested. This witness further testified that Consolidated would restore the service previously offered by Vannier only in the event the volume of freight would warrant the re-establishment of such service, and this volume would need to be from 10,000 to 15,000 pounds daily. This witness testified that he did not know where his company could obtain such a volume of freight delivery to warrant re-establishing the service previously offered by Vannier.

From the record it is apparent that such volume of freight as testified to by the witness Bowman is presently not available, and is unlikely to develop in the immediate future. It also appears from the record that the existing motor carriers serving Minden are unwilling to give the shipping public located at Minden the kind and type of service needed for proper conduct of the business of the shipping public, except if they may prescribe the terms and conditions, that is, by a guaranteed specific volume of freight.

In Dalton v. Kinney, 160 Neb. 516, 70 N. W. 2d 464, it is said: "In this instance there appears no order of the commission requiring the existing carriers to provide adequate service. Such an order was not required for here the certified carriers able to render adequate service clearly indicated an unwillingness to furnish the required service except under conditions as to time of service, cost, and adequacy which the carriers desired to control or unless otherwise they could find assurance of profitable operations. The commission accepted the alternative and issued a certificate to an applicant found, and shown without dispute, to be fit, willing, and able properly to perform the service required by the shipping public. Its decision in this regard cannot be held to be unreasonable or arbitrary."

We also held in Richling Transport Service v. Transit,

Inc., 154 Neb. 108, 47 N. W. 2d 413: "Furthermore, the statute requires that the finding that applicant is fit, willing, and able to perform the proposed service, and that such service is or will be required by the present or future public convenience and necessity, must be sustained by evidence showing that the granting of the certificate was not arbitrary or unreasonable." See, also, Bee Line Motor Freight v. Petersen & Petersen, Inc., 153 Neb. 517, 45 N. W. 2d 465.

In the light of the evidence and the authorities heretofore cited, we affirm the order of the commission.

AFFIRMED.