IN RE APPLICATION OF BLACK HILLS STAGE LINES, INC. BLACK HILLS STAGE LINES, INC., NORFOLK, NEBRASKA, APPELLEE, V. GREYHOUND CORPORATION, OMAHA, NEBRASKA, ET AL., APPELLANTS.

118 N. W. 2d 498

Filed December 7, 1962. No. 35250.

Jack Devoe, James E. Ryan, and John C. Coupland, for appellants.

Viren & Emmert and Kaye E. Wolcott, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

The Black Hills Stage Lines, Inc., of Norfolk, Nebraska, filed its application with the Nebraska State Railway Commission for a certificate of public convenience and necessity authorizing the transportation of passengers, mail, and express from Omaha to the point where U. S. Highway No. 385 crosses the Nebraska-South Dakota state line, serving all intermediate points as a common carrier. The commission granted the certificate as requested in the application.

The granting of the application was protested before the commission by the Greyhound Corporation, Omaha, Nebraska; Fred Larsen, Jr., doing business as Winner Bus Line, Winner, South Dakota; Gale Earl, doing business as Earl Bus Line, Chadron, Nebraska; and United Motor Ways, Inc., Grand Island, Nebraska. Upon the final grant of the certificate to Black Hills Stage Lines, Inc., the four named protestants appealed to this court.

The route sought for the operation applied for was from Omaha to the Nebraska-South Dakota state line via Fremont, Norfolk, O'Neill, Valentine, and Chadron. The Greyhound Corporation is authorized to serve a route from Omaha to Norfolk, via Fremont. The Winner Bus Line has authority to serve between Norfolk and O'Neill. Earl Bus Line has authority to serve between Valentine and Chadron. United Motor Ways, Inc., is authorized to serve between O'Neill and Valentine. From the foregoing it will be noted that the route from Omaha to Chadron is served by the four protestants. The evidence shows that there is no through bus from Chadron to Omaha and it is not possible to travel the entire route without numerous interchanges and long delays. The evidence shows that the elapsed time one way between Chadron and Omaha under existing schedules of the four

protestants is in excess of 32 hours. Under the proposed schedule of the applicant it would be less than 10½ hours. It is not disputed that additional service is needed in the area west of O'Neill, no other means of transportation by common carrier being available. The record does not disclose a need for additional service east of O'Neill.

The evidence shows that an interested group of persons and civic organizations west of Norfolk organized themselves into a voluntary organization known as the Northern Nebraska Transportation Association. A committee of that organization contacted each of the protestants in an attempt to secure through service between Omaha, Nebraska, and Rapid City, South Dakota, by each or by joint operation. Protestants declined to provide such service individually although some appeared willing to furnish such service in conjunction with the others. The committee then contacted the Black Hills Stage Lines, Inc., a new corporation whose officers and stockholders are officers of the Arrow Stage Lines, Inc., a bus transportation company operating in northeast Nebraska and connecting with the routes of three of the protestants. It is the contention of protestants that if the application of Black Hills Stage Lines, Inc., is granted, the route between Omaha and O'Neill should be restricted to protect the service provided in the area by Greyhound Corporation and Winner Bus Line. On the other hand, Black Hills Stage Lines, Inc., asserts that such restricted service between Omaha and O'Neill would make the through service between Omaha, Nebraska, and Rapid City, South Dakota, economically unfeasible, and that it could not and would not establish such through service unless certificates authorizing service to all intermediate points can be obtained from the Nebraska State Railway Commission, the South Dakota Commission, and the Interstate Commerce Commission. The problem presented appears to be one of first impression in this state.

The evidence sustains the following findings: There is a public need for through service west of O'Neill. There does not appear to be a public need for additional service between O'Neill and Omaha. The grant of a certificate of public convenience and necessity is not economically feasible without service to intermediate points between Omaha and Rapid City. The institution of the proposed through service will decrease the revenue now being obtained by Greyhound Corporation on its Omaha-Norfolk route, although it will not materially affect the revenue of its overall operations. The grant of the new certificate will reduce the revenue of Winner Bus Line, Earl Bus Line, and United Motor Ways, Inc., with a strong probability that one or more of them might be compelled to cease operations because of depleted revenue.

The purpose of the Nebraska Motor Carrier Act is stated in Shanks v. Watson Bros. Van Lines, 173 Neb. 829, 115 N. W. 2d 441, as follows: "The purpose of the Nebraska Motor Carrier Act was regulation for the public interest. Its purpose was not to stifle legitimate competition but to foster it. Its purpose was not to create monopolies in the transportation industry, but to eliminate discrimination, undue preferences or advantages, and unfair or destructive competitive practices. Legitimate competition is a normal attribute of our free enterprise system. It must be permitted to exist and the law contemplates that it shall."

The protestants rely in part on Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756, and In re Application of Effenberger, 150 Neb. 13, 33 N. W. 2d 296. These cases deal with regulated monopolies in cities where competition is wasteful and in all likelihood would result in insufficient and unsatisfactory service and extravagant rates. A transportation company under such a situation is ordinarily granted an exclusive franchise and requires the furnishing of all necessary service, the unprofitable as well as the profitable. A new

competition under such a situation will not ordinarily be permitted to compete in the lush areas of a city while the existing transportation system is required to render service in all parts of the city at rates fixed by the railway commission. These cases involve a principle not found in transportation problems in bus and truck operations outside of urban areas because they are not natural monopolies. The cited cases are not applicable to the situation before us for the reasons stated.

This court has consistently held: "In determining the issue of public convenience and necessity, controlling questions are whether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by applicant in a specified manner without endangering or impairing the operations of existing carriers contrary to public interest." Miller v. Consolidated Motor Freight, Inc., 168 Neb. 712, 97 N. W. 2d 265. See, also, Houk v. Peake, 162 Neb. 717, 77 N. W. 2d 310; Basin Truck Co. v. R. B. "Dick" Wilson, Inc., 166 Neb. 665, 90 N. W. 2d 268. The record discloses that the operation applied for will serve a useful purpose that is responsive to a public demand and need. It shows also that the service will not be adequately performed by existing carriers in the area. The question remaining for determination under the foregoing rule is whether or not the service to be performed by the applicant will endanger or impair the operations of existing carriers contrary to the public interest. We shall address ourselves to this question.

It must be conceded at the outset that the operations of the protestants will be impaired and endangered by the granting of the application of the Black Hills Stage Lines, Inc. It must also be conceded that the failure of the commission to grant the application will deprive the area of northern Nebraska west of O'Neill of transportation service which is badly needed and for which there appears to be great demand. In other words,

which is entitled to the greater consideration by the commission,—the furnishing of the badly needed service to this large area west of O'Neill and the 19 towns along the proposed route in the area, or the rights of certificate holders in the area east of O'Neill who cannot or will not provide the service but whose authorized routes will be impaired or endangered by the grant of a new application.

It is contemplated by the Nebraska Motor Carrier Act that the railway commission shall, among other things, regulate transportation by motor carriers in intrastate commerce upon the highways of Nebraska in such manner as to develop and preserve a highway transportation system properly adapted to the needs of the commerce of Nebraska. § 75-222, R. R. S. 1943. See, also, Ferguson Trucking Co., Inc. v. Rogers Truck Line, 164 Neb. 85, 81 N. W. 2d 915; Abler Transfer, Inc. v. Lyon, 161 Neb. 378, 73 N. W. 2d 667.

We point out that the grant of a certificate of public convenience and necessity does not create a vested right which for all time circumscribes the public interest. It never was intended that the granting of certificates for local bus service on fragmentary sections of a needed through service should operate as a permanent bar to the providing of such needed service to other sections of the state. The statute contemplates that the railway commission shall weigh the need for the new service and the detriment accruing to existing carriers, and determine which is the more consistent with the public interest. Where there is evidence to sustain conflicting factors advanced by the parties, which are required to be considered by section 75-222, R. R. S. 1943, the determination of the issue is peculiarly one for the railway commission and not the courts.

In a case similar on its facts the Interstate Commerce Commission stated: "The issues for consideration include whether applicant should be granted authority to transport passengers over the entire route unrestricted,

solely over that portion of the proposed route between Antlers and Wister, or over the entire route if restricted against service at intermediate points located between Wister and Fort Smith. If limited to the former, those elderly people and others needing service to Fort Smith for medical attention would be forced to interchange with protestant at Wister. The evidence clearly establishes a need for a direct service to Fort Smith, leaving for consideration the question whether a grant of the entire route subject to the closed-door restriction between Wister and Fort Smith would be practicable and feasible. Applicant takes the position that it would not be. A closed-door passenger operation is difficult for waiting passengers to understand and may at times result in wasteful transportation. In the absence of special circumstances not here present, we are reluctant to impose such a restriction. Based on the evidence of record, it is doubtful that a partial grant, or a grant restricted in the manner sought by protestant, would enable applicant to provide a practicable and profitable operation, and we conclude that the benefits which would be denied to the general public would far outweigh any detriment occurring to protestant." Jordan Bus Co. Extension—Fort Smith, Ark., 74 M. C. C. 611. We think the reasoning of the foregoing decision supports and justifies the grant of a new certificate to the applicant in the instant case. The order of the railway commission granting the new certificate to Black Hills Stage Lines, Inc., was within the jurisdiction of the commission to make, and under the evidence it was not arbitrary or unreasonable.

For the reasons stated, the order of the railway commission granting the application of Black Hills Stage Lines, Inc., for a new certificate of public convenience and necessity for the route between the described terminal points is affirmed.

AFFIRMED.