IN RE PROPOSED AMENDMENT TO CHAPTER III OF THE COMMISSION RULES AND REGULATIONS.
NEBRASKA STATE RAILWAY COMMISSION, APPELLEE, V. SEWARD MOTOR FREIGHT, INC., ET AL., APPELLANTS, IMPLEADED WITH WADE BUS LINES ET AL., APPELLEES.
IN RE APPLICATION OF SEWARD MOTOR FREIGHT, INC. SEWARD MOTOR FREIGHT, INC., APPELLANT, V. BEE LINE MOTOR FREIGHT, INC., ET AL., APPELLEES, CLARK BROS. TRANSFER, INC., INTERVENER-APPELLEE.

196 N. W. 2d 200

Filed March 31, 1972. Nos. 38067, 38055.

Nelson, Harding, Marchetti, Leonard & Tate, J. Max Harding, Charles J. Kimball, David R. Parker, Gailyn L. Larsen, and Acklie & Peterson, for appellants.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee Nebraska State Railway Commission.

Einar Viren, for appellee Bee Line Motor Freight, Inc.

James E. Ryan, for intervener-appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

Appeals Nos. 38067 and 38055 were consolidated in this court for the purposes of briefing and argument, and, because they are closely related, we shall consider them together.

Case No. 38067 involves the adoption of an amendment to Chapter III of the Rules and Regulations of the Nebraska State Railway Commission concerning the tacking or joining of motor common carrier authorities in the State of Nebraska. We affirm the right of the Commision to adopt the amendment.

Case No. 38055 involves the application of Seward Motor Freight, Inc., hereinafter referred to as Seward, to tack its regular and irregular route authorities. Those authorities are as follows: "Commodities generally, except those requiring special equipment. Regular Route: Between Omaha and Grand Island, via US-6 to Lincoln; thence via US-34 to junction with US-281; thence via US-281 to Grand Island, serving all intermediate points and the off-route points to Bee, Tamora and Phillips.

"RESTRICTION: No local service to be performed between Omaha and Lincoln or points intermediate thereto.

"Irregular Route: Between points within a 10-mile radius of Seward, and between points within said radial area on the one hand, and, on the other hand, points in Nebraska." The application to tack the authorities was denied. We affirm.

On March 15, 1971, the Nebraska State Railway Com-

mission entered the following order: "Motor common carriers shall not tack their irregular route authorities nor shall they tack their irregular and regular route authorities. Motor common carriers may tack their regular route authorities." This order, which will be hereinafter referred to as Rule 19, was entered pursuant to notice published December 10, 1970, and hearings held on January 26, 1971, February 19, 1971, and March 5, 1971. The original published notice was broader than the order entered in that it would have prevented the tacking of regular authorities. The order as entered prohibits tacking of irregular route authorities and the tacking of irregular and regular route authorities, but specifically authorizes the tacking of regular route authorities.

The protestants and objectors are the following appellants herein: Seward Motor Freight, Inc.; Booth Transfer, Inc.; Ideal Truck Lines, Inc.; Logan Valley Transfer, Inc.; Stromsburg Motor Freight, Inc.; Nebraska City Transfer; Arrow Freight Lines, Inc.; and Young and Hay Transportation, Inc.

Appellants set out nine specific assignments of error. We notice the following: "1. The order of the Commission in the Rule and Regulation No. 19 proceeding was entered without jurisdiction or power to enter it.

"2. Said order deprives appellants of rights and property without due process of law in violation of the due process clauses of the Nebraska and U. S. Constitutions.

"3. Said order is arbitrary and unreasonable. * * *

"5. The Commission erred in finding that said order will best serve the public interest, 'protect existing certificates,' and that tacking of regular route and irregular route motor common carrier authorities or irregular route authorities should not be allowed.

"6. The Commission erred in concluding that it could not effectively and efficiently regulate the motor common carrier industry or best serve the public interest if such tacking is allowed and that tacking 'tends to elim-

inate and destroy the restrictions and limitations placed in certificates.' "

The position of the appellants is bottomed upon the erroneous assumption that before the adoption of Rule 19, they had a legal right to tack regular and irregular authorities and that it was not necessary to obtain express authorization from the Commission. In fact, their argument is predicated on the assumption that the Commission is now prohibiting a right granted by their certificates of authority. Except in instances where the right to tack has been specifically granted by the Commission, the right does not exist. It is not an implied right inherent in existing certificates.

While the Commission had granted and prohibited the tacking of authorities in the past, until 1966 it had no clearly defined tacking practice policy. Its failure previous to January 1, 1968, to enunciate a rule and regulation on tacking cannot conceivably be construed to imply that the right to tack was inherent in the certificate heretofore issued unless specifically restricted. The question is not as assumed by appellants, whether the Commission had previously indicated that tacking was not permitted, but rather has the Commission ever held that tacking was permitted unless specifically prohibited. The answer must be in the negative. We hold the right does not exist unless specifically granted.

On May 31, 1966, Romans Motor Freight, Inc., filed a petition for the institution of a general investigation and for issuance of general orders with respect to tacking of authorities. A hearing was held, "In the Matter of a General Investigation of Tacking of Authorities," on September 12, 1966. At that hearing counsel for Romans suggested the problems involved and the need for an order to clarify the issues. Another public hearing was held on March 14, 1967. Pursuant to those hearings, the Commission on October 9, 1967, entered Rule and Regulation Order No. 8, to become effective on January 1, 1968. This rule provided that motor carriers should not

tack their irregular route authorities and, unless specifically authorized by the Commission after notice and hearing, they should not tack their irregular route and regular route authorities nor tack their regular route authorities. As used in the rule, "tacking" included the terms "joining" and "combining."

On December 7, 1967, the Commission entered Rule and Regulation Order No. 10 pursuant to a public hearing held on November 29, 1967, providing that the provisions of Rule and Regulation Order No. 8, pertaining to regular route authorities, should not apply to such authorities granted on or before December 31, 1967.

We set out pertinent legislative provisions so far as material herein. Section 75-109, R. R. S. 1943, provides: "The commission shall have the power to * * * exercise a general control over, all common carriers * * *."

Section 75-110, R. S. Supp., 1969, provides: "* * * The commission shall also promulgate regulations which the commission deems necessary to regulate persons within the commission's jurisdiction. The commission shall not take any action affecting persons subject to the commission's jurisdiction unless such action be taken pursuant to a rule, regulation, or statute."

Section 75-301, R. R. S. 1943, provides: "It is hereby declared to be the policy of the Legislature to (1) regulate transportation by motor carriers in intrastate commerce upon the public highways of Nebraska in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers, in the public interest; (2) promote adequate economical and efficient service by motor carriers, and reasonable charges therefor, without unjust discrimination, undue preferences or advantages, and unfair or destructive competitive practices; (3) improve the relations between and coordinate transportation by, and regulation of, motor carriers and other carriers; (4) develop and preserve a highway transportation system properly adapted to

the needs of the commerce of Nebraska; (5) cooperate with the several states and the duly authorized officials thereof; and (6) cooperate with the Interstate Commerce Commission in the administration and enforcement of the Federal Motor Carrier Act, 1935, approved by the President on August 9, 1935. The Legislature declares that all of the available carriage service, including common carriage by rail and road, and contract carriage by road, are so interdependent that the public may not continue to have a safe, dependable transportation system unless contract carriers operating on the same roads with common carriers are brought under just and reasonable regulations bringing their service into relation with common carriers."

Section 75-309, R. S. Supp., 1969, provides: "It shall be unlawful for any common or contract carrier by motor vehicle subject to the provisions of articles 1 and 2 of this chapter and sections 75-301 to 75-322.01 to engage in any intrastate operations on any public highway in Nebraska unless there is in force with respect to such common carrier a certificate of public convenience and necessity, or a permit to such contract carrier, issued by the commission authorizing such operation."

Section 75-311, R. S. Supp., 1969, provides in part: "A certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found after notice and hearing that the applicant is fit, willing, and able properly to perform the service proposed, and to conform to the provisions of sections 75-301 to 75-322.01 and the requirements, rules, and regulations of the commission thereunder and that the proposed service, to the extent to be authorized by the certificate, whether regular or irregular, passenger or property, is or will be required by the present or future convenience and necessity; otherwise said application shall be denied." '

To put the problem in proper perspective, understanding of the differences in the authorities is necessary.

For the purposes of this opinon, regular route authority covers the transportation of property in intrastate commerce by motor vehicles between fixed termini and over a specified highway or highways upon a fixed schedule. Irregular authority covers the transportation of property in intrastate commerce by motor vehicle over irregular routes at any time convenient to the carrier over any convenient highways from a base point to any place within a defined radial area, or from any place within the area to the base point, or in the case of irregular nonradial authority, between points in the area without reference to a fixed base point. Simply stated, the practice of tacking involved herein is the operation by a carrier between two or more of its irregular routes or between irregular and regular routes in order to reach a point which could not legally be served by operation over any single irregular or regular route or combination of regular routes.

Appellants have not produced any Nebraska citations to support their contention that a right to tack existed prior to the adoption of a general policy by the Commission. In fact, counsel for appellants stated at the hearing: "Now, there's never been a rule adopted by this Commission from the time the Motor Carrier Act was passed until the first rule was adopted effective January 1, 1969, that had anything at all to do with tacking or interlining. There were some representations made by Commission personnel, including myself when I worked for this esteemed body, that you couldn't tack regular and irregular authority, but there was never a regulation of any sort adopted on it until January 1, 1969." Counsel was wrong as to the date. Rule and Regulation Order No. 8 to which he refers became effective on January 1, 1968.

To permit unlimited tacking when the certificates now in effect were not issued with reference to that right, violates the intent and purpose of the law relating to common carriers. To do so expands certificated author-

ity in violation of the intent of the Commission in granting the original certificates of authority. It is the certificate which determines the terms or extent of the carrier's operations. If the right to tack is not specifically granted, it does not exist. Contrary to the contention of the appellants, we agree with the Commission that in order to best serve the public interests and to protect existing certificates of public convenience and necessity heretofore issued by the Commission, the tacking or joining of regular to irregular route authorities, as well as irregular to irregular route authorities, should no longer be allowed, and that proposed Rule 19 should be adopted.

The determination of this policy by the Commission is within its inherent jurisdiction. We respect its finding that it cannot effectively and efficiently regulate the motor carrier industry or best serve the public interest if it continues to allow such tacking of authorities. We accept its conclusion that the tacking prohibited herein tends to eliminate and destroy the limitations and restrictions placed upon such certificates of public convenience and necessity by the Commission's orders and rules and regulations. Henceforth, where there is a need for irregular service into an area or community outside the central radius of an irregular route radial authority, an application must be made to the Commission to serve such point or points as an additional base point to the carrier's irregular route authority. Likewise, if there is a need for service to an area or community on a regular basis, such areas or communities can be served by making application to the Commission to serve these points as off-route points to the carrier's existing regular route. Such applications will be granted by the Commission upon a showing of the statutory requirements of the carrier's fitness and public convenience and necessity.

To illustrate, Seward Motor Freight, Inc., has regular route authority between Omaha and Grand Island via

Lincoln and Seward, and irregular route authority between points and places within a 10-mile radius of Seward and between points and places within said radial area and points and places in Nebraska. Tacking of its regular and irregular route authorities would destroy the type of certificates under one or both of the authorities. For example, if Seward began to conduct operations regularly from Omaha to Seward, and then on its irregular route authority to the communities within that authority, it would be transforming its irregular route authority to a regular route authority to those towns. On the other hand, if it was not limited to the towns within the 10-mile radius but rather it hauled shipments from Omaha to Seward and then to various points in the State of Nebraska on an irregular basis, then it would be performing irregular route operations on the regular portion of its certificate from Omaha to Seward. In this way the granting of regular and irregular route tacking can destroy the classifications the Commission has made through its rules and regulations on one or both of the authorities. It is no answer to assert that the Commission has power to control abuses. The feasibility and propriety of this expansion of the certificates has never been considered by the Commission. It has had no opportunity to consider the public convenience and necessity of the expanded authority.

To find prescriptive rights to tack would expand the scope of the authorities tacked without giving the Commission the opportunity to determine the necessity for such expansion under section 75-311, R. S. Supp., 1969. Seward argues that denial of its right to tack will deprive some towns of the service it is able to perform. We appreciate that in the interest of effective and efficient regulation of motor carriers there will be some such problems. As the record discloses, the towns listed by Seward as being adversely affected are not totally without remedy.

Appellants contend that Rule 19 was entered without

jurisdiction or power to enter it. Section 75-110, R. S. Supp., 1969, specifically requires the Commission to adopt rules and regulations which it deems necessary to regulate persons within its jurisdiction. Section 75-118.01, R. S. Supp., 1969, gives the Commission original, exclusive jurisdiction to determine the validity of a rule or regulation and the scope and meaning of a certificate.

There can be no question that Rule 19 is within the ambit of authority granted to the Commission by section 75-109, R. R. S. 1943, and sections 75-110, 75-310, and 75-311, R. S. Supp., 1969. To hold otherwise would destroy the effectiveness of those sections. There may be instances where tacking could be permitted without undue interference with other certificates of authority, but these are policy questions within the jurisdiction of the Commission.

There is no merit to appellants' contention that the order deprives them of rights and property without due process of law. As suggested heretofore, the order is not a limitation, revocation, change, or modification of any authority previously granted, as contended by appellants in claiming the Commission is acting retrospectively so as to restrict or reduce valuable rights. Section 75-313, R. R. S. 1943, so far as material herein, requires that: "Each certificate shall specify the service to be rendered, the routes, the fixed termini, if any, and the intermediate and off-route points, if any, and in case of operations not over specified routes or between fixed termini, the territory within which such carrier is authorized to operate. Each permit shall specify the business of the contract carrier covered thereby and the scope thereof." Seward has no rights other than those specifically granted by its present certificates of authority.

Unless tacking was specifically authorized by the Commission, Seward had no right to tack its regular and irregular route authority. The fact that it may have performed unauthorized operations under the im-

pression that it had such right does not create a property right or a right to tack. Common carriers cannot acquire prescriptive rights by virtue of unauthorized use of routes. Interstate Common Carrier Council of Maryland, Inc. v. United States, 84 F. Supp. 414, affirmed, 338 U. S. 843, 70 S. Ct. 91, 94 L. Ed. 516.

Appellants argue that most states permit tacking but cite no statutory or case authority for it in Nebraska. Our observation is that in those jurisdictions which permit it, the original certificates were probably issued in the light of that practice and the certificating agency had an opportunity, in the light of the practice, to attach conditions to the certificates where the public interest would not be served. In any event, tacking is an extension of the authorized service and must be and is under the regulation of the Commission rather than being left to the unbridled discretion of the carriers subject to regulation by the Commission.

Rule 19 was adopted by the Commission pursuant to an informal, nonadvisory type proceeding had by the Commission on its own initiative. Notice of the hearing was published and a copy of the notice was sent to those who could be affected. This proceeding was within the ambit of the Commission's jurisdiction and we find no fault with the procedure adopted. The order adopted is of a legislative nature, with general application to all carriers within a certain class. We have frequently said that on an appeal from an order of the Nebraska State Railway Commission, administrative or legislative in character, the only questions to be determined are whether the Commission acted within the scope of its authority and whether the order is reasonable and not arbitrarily made. Preisendorf Transp., Inc. v. Herman Bros., Inc., 169 Neb. 693, 100 N. W. 2d 865.

The Seward application was largely predicated on its claim that for several years it had tacked its regular and irregular route authorities at the common point of

Seward. As heretofore suggested, this operation was conducted under the erroneous assumption by the appellant that it was permitted to do so. It did not have that right, and the evidence of such operation cannot be used to invoke a prescriptive right to tack. Consequently, the denial of the right is not unreasonable or arbitrary. The fact that tacking, herein prohibited, may have previously been permitted after hearing in some instances, does not change that situation. In view of our holding on the amended rule and regulation herein, the action on the Seward application is affirmed. The relief available to Seward is the filing of applications for the amendment of its authority, as suggested above.

JUDGMENTS AFFIRMED.

McCOWN, J., dissenting.

I respectfully dissent.

The majority opinion holds the "tacking" of unrestricted authorities is illegal and in violation of the intent of the Commission in granting the original certificates. It also states: "If the right to tack is not specifically granted, it does not exist." There is no authority for those statements and they are flatly contradicted by repeated holdings of the Interstate Commerce Commission and federal courts as applied to interstate carriers.

In Aetna Freight Lines, Inc., Interpretation of Certificate, 48 M. C. C. 610 (1948), the Interstate Commerce Commission said: "The right of the motor common carrier to tack separate grants of unrestricted authorities is well settled regardless of whether the authorities involve regular routes, irregular routes, or a combination of both." To the same effect, see M. I. O'Boyle & Son, Inc. v. E. Brooke Matlack, Inc., 81 M. C. C. 201 (1959). As to the type of situation involved here, see Malone Freight Lines, Inc. v. United States, 107 F. Supp. 946 (1952), affirmed, Per Curiam, 344 U. S. 925, 73 S. Ct. 497, 97 L. Ed. 712 (1953).

It should be noted also the evidence discloses that

from the very beginning of motor carrier regulation in Nebraska, tacking of regular and irregular route segments of authority, as well as tacking of two irregular route segments, was permitted except where specifically prohibited. Until 1966, the Commission had no rule or regulation prohibiting or limiting carriers' right to tack generally and there had never been any statutory prohibition against operations involving tacking of any kind. The record here does not show any specific findings of fact which will support the Commission's general prohibitory order applied retroactively as it was. The findings constitute statements of opinion of the Commission, reflecting the policy decision involved without the requisite factual support for such retroactive effect.

In addition to the overall issues involved in the general order prohibiting tacking, the majority opinion here affirms the order of the Commission denying the application of Seward Motor Freight, Inc., for the right to tack its own specific certificates. The only evidence in the record demonstrated that its services involving tacking on its own routes is needed by many shippers and some entire communities who would otherwise have no service or very inadequate service. There is no evidence that any other existing carrier could serve the need as well as the applicant. No carriers opposed the application. The evidence was clear that the operations provided by the tacking of authorities by Seward Motor Freight, Inc., and covered by the application had been conducted over a long period of time under color of authority. The test in such circumstances was set down in Black Hills Stage Lines, Inc. v. Greyhound Corp., 174 Neb. 425, 118 N. W. 2d 498. The test is (1) whether the operation will serve some useful purpose responsive to a public demand or need; (2) whether the purpose can or will be served as well by existing carriers; and (3) whether it can be served by applicant without endangering or impairing the operations of existing carriers contrary to the public interest.

Even if it be conceded that the Commission had authority to determine a general tacking policy, at least prospectively, there are no specific findings of fact to support the general order prohibiting tacking conducted over a period of years under color of authority and with the full knowledge and tacit consent of the Commission. Neither is there evidence in the record to support the specific denial of the application of Seward Motor Freight, Inc. The action of the Commission in both instances was arbitrary and unreasonable and should have been set aside.