IN RE APPLICATION OF EARL HOUK AND FRANK WOODROW.
EARL HOUK ET AL., APPELLEES, V. RAY PEAKE ET AL.,
APPELLANTS, TRANSIT, INC., ET AL., INTERVENORS-
APPELLEES.
IN RE APPLICATION OF EARL HOUK.
EARL HOUK ET AL., APPELLEES, V. RAY PEAKE ET AL.,
APPELLANTS, W. W. BELKLEY, INTERVENOR-APPELLEE.
77 N. W. 2d 310

Filed June 1, 1956. Nos. 33882, 33883.

*Viren, Emmert & Hilmes,* for appellants.

*Robert S. Stauffer,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This opinion involves two appeals from separate orders rendered in separate proceedings by the Nebraska State Railway Commission, hereinafter called the commission. In this court the appeals were separately docketed but consolidated for briefing, argument, and decision. They will be generally referred to as dockets No. 33882 and No. 33883, and will be decided separately in that order.

On December 2, 1953, Earl Houk and Frank Woodrow, partners, doing business as Western Transport Service, hereinafter called applicant, filed an application, No. M-6859, supplement 3, seeking to extend the territorial scope of its existing certificate of convenience and necessity to include the transportation of petroleum products in bulk "between all points and places in Nebraska, located on and west of U. S. highway No. 183" alleging that the proposed service was "required by the present or future public convenience and necessity" because "There are insufficient motor carriers domiciled in and performing service in the western part of Nebraska. The recent program for installation of pipe line heads will increase the need and demand."

On January 11, 1954, Wheeler Transport Service, Incorporated, Ray Peake, doing business as Peake Transport Service, and Charles D. Doher, doing business as Doher Transport Company, hereinafter called protestants, or Wheeler, Peake, and Doher, as the occasion requires, filed written protest alleging that present and future public convenience and necessity did not require the service proposed by applicant; that as holders of certificates of public convenience and necessity, protestants are ready, willing, and able to perform such proposed service; and that to grant the application would impair their ability to operate in conformity with their certificates of public convenience and necessity.

Hearing upon the application was held by an examiner on January 22, 1954, and on September 9, 1954, he filed

a report recommending denial of the application. Exceptions thereto were filed by applicant alleging that the examiner's report was not sustained by the evidence but was contrary thereto and contrary to law. Hearing thereon was had by the commission on October 30, 1954, and on April 7, 1955, it entered an order sustaining the exceptions in part and overruling the examiner's report in part. In doing so, the commission enlarged applicant's points of origin, but denied the application insofar as it pertained to destination territory, thereby restricting applicant's new certificate to the same destinations as originally authorized. The order found that present and future public convenience and necessity required such extensions because of the ever-shifting source of supply of petroleum products over which the commission had no control, which did not result in the placing of additional carriers in the field, or disturb the competitive situation, but resulted in continuity of dependable service to the destination area. The order found that applicant was fit, willing, and able to properly perform the service proposed and to conform with sections 75-222 to 75-250, R. R. S. 1943, and with orders, rules, and regulations of the commission. Thereupon the order revoked applicant's prior certificate, and, consolidating it with the extended authority, issued a new certificate.

Thereafter protestants filed a motion for rehearing upon the grounds that the order of April 7, 1955, was arbitrary, unreasonable, and not sustained by the evidence, but was contrary thereto and contrary to law. Hearing thereon was had by the commission on June 1, 1955, and on June 10, 1955, the motion was overruled. Therefrom protestants appealed to this court, assigning that for reasons comparable with those contained in their motion for rehearing, the order of April 7, 1955, authorizing the issuance of the extended certificate of public convenience and necessity to applicant, was

erroneous. We conclude that the assignment should not be sustained.

In Christensen v. Highway Motor Freight, 158 Neb. 601, 64 N. W. 2d 99, this court held that: "Courts should review or interfere with administrative and legislative action of the Nebraska State Railway Commission only so far as is necessary to keep it within its jurisdiction and protect legal and constitutional rights.

"The Nebraska State Railway Commission has original jurisdiction and the sole power to grant, amend, deny, revoke, or transfer common carrier certificates of convenience and necessity and such proceedings are administrative and legislative in character.

"On an appeal to the Supreme Court from an order of the Nebraska State Railway Commission, administrative or legislative in character, the only questions to be determined are whether the commission acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made.

"The burden is on an applicant for a certificate of convenience and necessity to show that the operation under the certificate is and will be required by the present or future convenience and necessity.

"In determining the issue of public convenience and necessity, controlling questions are whether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by applicant in a specified manner without endangering or impairing the operations of existing carriers contrary to public interest.

"The prime object and real purpose of Nebraska State Railway Commission control is to secure adequate sustained service for the public at minimum cost and to protect and conserve investments already made for that purpose, and in doing so primary consideration must be given to the public rather than to individuals."

In the light of such rules and others hereinafter dis-

cussed, we have examined the record in docket No. 33882, and summarize the evidence as follows: Applicant's original authority was to transport "(a) * * * Petroleum products in bulk * * * Between Superior and Scottsbluff, Nebraska, on the one hand, and, on the other hand, Venango, Big Springs and Lorenzo, and points and places located within a territory bounded on the west by the Nebraska-Wyoming state line; on the south by US No. 30; on the east by Nebraska No. 10 to its junction with Nebraska No. 2; thence west via Nebraska No. 2 to its junction with Nebraska No. 27; thence via Nebraska No. 27 to the Nebraska-South Dakota state line, and on the north Nebraska-South Dakota state line, including points and places located on said boundaries, all over irregular routes. * * * (b) Crude oil, between points and places within a 60-mile radius of Gurley, Nebraska, over irregular routes."

The extended authority granted was transportation of "Petroleum products in bulk * * * A. From all producing, refining, distributing and loading points within the State of Nebraska as points of origin, to Venango, Big Springs, and Lorenzo, and to points and places located within" the identical destination territory as that authorized in applicant's original authority. Also, the crude oil territory remained the same as that in applicant's original authority.

Applicant has been successfully engaged in transporting petroleum and petroleum products in bulk in tank trucks in western Nebraska since 1934, and is now conducting such operations in that field pursuant to its certificates issued by the Nebraska State Railway Commission and the Interstate Commerce Commission. Thus applicant is not a new carrier claiming the right to service destination territory not theretofore served by it. There is substantial competent evidence that applicant is fit, willing, and able to perform the proposed service. As a matter of fact, that is conceded by protestants. Applicant has terminal facilities and an office at Scotts-

bluff where it has adequate equipment and employs full-time a bookkeeper office manager, 4 mechanics, 10 drivers, and a foreman supervisor. Applicant has been requested to make many hauls which it was not authorized to make. It is interested primarily in obtaining additional points of origin because of the ever-shifting sources of petroleum supply.

In such respect, new production of oil is now mainly in the western quarter of this state, particularly in Cheyenne, Kimball, Banner, and Morrill counties, all in applicant's destination territory, but the oil drilling territory is rapidly expanding. This is illustrated by the fact that without dispute two large oil companies planned to drill 160 oil wells in Nebraska during 1954 and numerous smaller companies would drill wildcat wells. Further, the Wyoming-Nebraska Pipe Line Company planned in 1954 to build an oil pipe line from Cheyenne eastward with terminals at North Platte, Sidney, and elsewhere in applicant's destination territory from which petroleum products will be transported to points therein.

The branch manager of the California Company, who lives at Scottsbluff, appeared as a witness for applicant, as authorized by his superiors. He has company responsibility for supply, distribution, ordering, collection, hiring of transportation facilities, and generally overseeing the operation of its refined petroleum products in the portion of western Nebraska involved in this application, the Black Hills area of South Dakota, and the eastern edge of Wyoming. He uses motor carriers exclusively and has used and needs the service of applicant which has been satisfactory. He was familiar with the proposed pipe line, and, when constructed, his company intends to expand along the pipe line and patronize it, which will require motor carrier service from the pipe line terminals to his company's many enumerated jobber destinations in western Nebraska and east to Cozad and Kearney. His company contem-

plates also a future need for common carrier service for transportation of petroleum products from Chadron and Scottsbluff. For such reasons, his company needs a western motor carrier with broad authority, and because of such need, supported the application. He testified that protestants never had solicited any business from him or contacted him, and had never transported petroleum products for his company in his field of operations. The same was true of Transit, Inc., who intervened herein but did not appeal to this court. He testified that his company was interested primarily in being able to secure adequate transportation services, but admitted that he listened to the wishes of the company's jobbers in that respect.

The wholesale representative and general manager for Skelly Oil Company at Scottsbluff also testified as a witness for applicant. His territory was all of western Nebraska as far east as Valentine on the north and Gothenburg on the south going east. Only a small portion of such territory was outside of applicant's destination territory. His company has used applicant's transportation service interstate since 1949, which has been satisfactory. When the pipe line is constructed, his company will require that service for intrastate transportation from the pipe line terminals to its jobbers at North Platte, Ogallala, Brule, Chappell, Sidney, Kimball, Gurley, Bayard, Scottsbluff, Minatare, Chadron, Alliance, Broadwater, and Oshkosh, all in applicant's destination territory. His company also has a program of expansion in western Nebraska. He has never used and has never been solicited to use the services of protestants in his territory, and knew only of their services in eastern Nebraska. He also testified that his company was primarily interested in having adequate transportation service by any person who would satisfactorily perform it.

On the other hand, protestant Wheeler has authority to transport petroleum products in bulk "From all pro-

ducing, refining and loading points in Nebraska, on the one hand, and, on the other hand, all points and places within a 175-mile radius of Platte Center, Nebraska, as points of destination, and return of rejected shipments, over irregular routes." In that respect, a small part of his destination territory concurrently overlaps applicant's existing destination territory, which was not extended. Wheeler serves no points of origin west thereof. He maintains a terminal at Genoa and a driver's home office at Madison, and serves intrastate from Superior and Omaha. If the pipe line terminal was constructed at North Platte, he would, if necessary, maintain terminal facilities, acquire additional equipment, and seek transportation therefrom. Assuming for purposes of argument only that the commission gave no consideration to the authority of Wheeler, it would make no difference in this case. Under his present authority, he has not and could not render any service west of his destination territory. Because his destination territory concurrently overlaps only a small portion of applicant's destination territory, he could, if necessary, provide such a small part of the proposed service that it would be of little benefit to the public and little if any detriment to him. In other words, this is not a case wherein applicant was a newcomer in an authorized field already occupied by Wheeler.

Transit, Inc., which has intrastate authority to transport petroleum products in bulk from all refining, distributing, and loading points in Nebraska to all points within a 300-mile radius of Palisade, intervened, and its traffic manager testified in its behalf in this proceeding, but such intervenor did not appeal or make any appearance in this court. Further, he gave no evidence which could be helpful to protestants who did appeal. It has land upon which it could construct terminal facilities at Fairmont, but business did not warrant construction there. If sufficient volume of profitable traffic developed after construction of the pipe line, it would

be glad to construct a terminal at North Platte or Sideny, but had made no plans to do so. His company had no terminal facilities or relay points west of U. S. Highway No. 183. It had never served the refinery at Scottsbluff within the last 3 years, and has never provided service from the Chadron refinery. His company has never been in competition with applicant, but he thought that it would be if the extension were granted.

On the other hand, Doher offered no testimony in this proceeding. He did testify in the order to show cause and transfer application, docket No. 33883, hereinafter discussed. Conceding for purpose of argument only that his testimony could be properly considered in this proceeding, it would not change the result. The extent of his authority is not only equivocal but in fact is in litigation in this court and cannot yet be ascertained. His original authority was from all producing, refining, and distributing points in Nebraska to places within a 50-mile radius of Omaha and a 50-mile radius of Lincoln. He claims to have solicited business in western Nebraska, but there is no competent evidence that in recent years he ever operated in that territory. He operates only five units, but in the event the pipe line is constructed at North Platte and his supplemental extended authority is given validity, he would be willing, if needed, to purchase equipment and conduct transportation from it.

Peake has headquarters at Chester with relay points at Falls City, Wahoo, and York. He has statewide intrastate authority to transport petroleum and petroleum products in bulk in tank trucks. The record discloses that he has provided some limited service to a few points in the east end of applicant's destination territory, but he maintains no terminals or relay points in western Nebraska, and most of his business originates in Omaha and terminates east of U. S. Highway No. 183, without any appreciable competition with applicant. If terminals are opened west thereof and

business conditions demanded it, he intended to acquire terminal facilities and equipment and solicit the traffic.

In In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507, relied upon by protestants, the order of the commission increased the specific scope of applicant's destination area where adequate and satisfactory transportation service already existed. In that opinion we said: "The question of the adequacy of service of existing carriers is implicit in the issue of whether or not convenience and necessity demand the service of an additional carrier *in the field*. Obviously the existence of an *adequate and satisfactory* service by motor carriers *already in the area* is complete negation of a public need and demand for added service by another carrier." (Italics supplied.) The converse thereof exists in the case at bar. Herein, applicant's existing destination area has not been enlarged and it is territory which has been theretofore satisfactorily served by applicant in a field not occupied by or adequately and satisfactorily served by protestants. A small portion of such territory has been served at times few in number by two protestants who never have actually occupied applicant's field of destination but would do so if future business then made it necessary and profitable.

As recently as Dalton v. Kinney, 160 Neb. 516, 70 N. W. 2d 464, this court used language applicable here when we said: "In this instance there appears no order of the commission requiring the existing carriers to provide adequate service. Such an order was not required for here the certified carriers able to render adequate service clearly indicated an unwillingness to furnish the required service except under conditions as to time of service, cost, and adequacy which the carriers desired to control or unless otherwise they could find assurance of profitable operations. The commission accepted the alternative and issued a certificate to an applicant found, and shown without dispute, to be fit,

willing, and able properly to perform the service required by the shipping public. Its decision in this regard cannot be held to be unreasonable or arbitrary."

For reasons heretofore stated, we conclude that the order of the commission in docket No. 33882, which extended applicant's points of origin, was not arbitrary or unreasonable. Therefore, it should be and hereby is affirmed, with all costs taxed to protestants.

We turn then to docket No. 33883. In that regard, on February 4, 1954, Earl Houk, doing business as Western Nebraska Transport Service, filed application No. M-10364 with the commission seeking to acquire the operating rights and authority of Earl Houk and Frank Woodrow, doing business as Western Transport Service, which authority had been granted in application No. M-6859, supplement 2.

On July 14, 1954, Wheeler, Peake, and Doher filed written protests upon grounds identical in effect with those contained in their protests filed in docket No. 33882, heretofore disposed of. They also filed an application for an order to show cause and a petition in intervention in support thereof, alleging that the certificate held by Earl Houk and Frank Woodrow, doing business as Western Transport Service, was dormant and should be cancelled for failure to conduct operations within the scope of their authority and in violation of orders, rules, and regulations of the commission and the Motor Carrier Act.

Due notice was given, and thereafter on July 27, 1954, a hearing was had upon the application and order to show cause. Thereafter, on December 3, 1954, a consolidated report of the examiner recommended: (1) That the order to show cause should be vacated; and (2) that the transfer application should be granted. In the light of authorities cited and evidence received, the examiner found that there had not been any willful failure to perform the services authorized; that the certificate of Earl Houk and Frank Woodrow, doing business as Western Transport Service, had not become dormant by in-

activity; that applicant was fit, willing, and able to perform the services; and that the proposed transfer of the certificate, being consistent with public interest, should be granted.

On December 9, 1954, protestants filed exceptions to the report of the examiner upon the ground that it was not sustained by the evidence but was contrary thereto and contrary to law. On April 7, 1955, after hearing thereon, the commission entered a consolidated order overruling protestant's exceptions to the examiner's report, and approved it as modified.

Thereafter, protestants filed a motion for rehearing upon the ground that the order of April 7, 1955, aforesaid, was not sustained by the evidence but was contrary thereto and contrary to law. After hearing thereon, the motion was overruled on June 10, 1955, and protestants appealed to this court assigning that the vacation of the order to show cause was arbitrary and unreasonable, and that the transfer of the certificate was void, unreasonable, arbitrary, and contrary to law, because it was issued without notice and hearing as required by section 75-240.02, R. S. Supp., 1955. We conclude that the assignment has no merit.

Section 75-240.02, R. S. Supp., 1955, provides in part: "Approval of such transfer * * * either in whole or in part, may be given, only upon findings by the commission, after notice and hearing, that such transfer * * * will be consistent with the public interest, will not unduly restrict competition and that the applicant transferee * * * is fit, willing, and able to properly perform the service proposed; Provided, that if any of the certificates * * * proposed to be transferred * * * are dormant, the commission may approve an application of transfer * * * of any such certificates * * * only upon the basis of proof of and a finding that the transfer * * * of such certificates * * * is or will be required by the present and future public convenience and necessity, in the same manner as provided in section 75-230; and pro-

vided further, that if the proposed transfer * * * of any such certificates * * * will permit or result in a new or different service or operation as to territorial scope than that which is or may be rendered or engaged in by the transferor * * * or * * * will tend to enlarge competition over that then existing, the commission may approve such an application for transfer * * * only upon the basis of proof of and a finding that the proposed transfer * * * of the certificates * * * is or will be required by the present and future public convenience and necessity, in the same manner as provided in section 75-230."

In that connection, the record discloses that at the time of the hearing by the examiner on transfer application No. M-10364 and the order to show cause filed therein by protestants, no order had yet been entered by the commission although notice and full hearing had been had upon extension application No. M-6859, supplement 3, docket No. 33882, heretofore disposed of. Therefore, at the opening of the hearing by the examiner on transfer application No. M-10364 and the order to show cause therein, counsel for applicant moved that the extended authority, if any such was granted as a result of extension application No. M-6859, supplement 3, should "be included in the transfer of the authority in the docket now in hearing."

Thereat, counsel for protestants, who had due notice of such hearing and were present thereat, objected but did so only upon the stated ground that the "order to show cause could not go against an application which has not been granted. And that will have to stand solely upon its own merits. I realize, of course, the Examiner can't rule on it at this time. I suggest that he reserve the ruling on it. I don't know how he could possibly rule on it if they deny it." Thereupon the examiner took applicant's motion under advisement, but the record discloses that throughout the proceedings full inquiry was made by all the parties with regard to the transfer

of the proposed extension authority without any objection by protestants.

The consolidated order of the commission overruled exceptions to the examiner's report, but modified same by including and consolidating therein the extended authority granted by the commission in application No. M-6859, supplement 3, docket No. 33882 herein. The order recited that protestants had notice and appeared at the hearing in opposition to both the extension and transfer applications. It pointed out that it had been the policy of the commission to revoke operating rights held by an applicant for an extension and to consolidate the authority contained therein with the additional authority granted when such operating rights were mutually and necessarily interdependent. Therefore, the authority in application No. M-6859, supplement 2, was revoked and cancelled, and a consolidated certificate of public convenience and necessity was issued to applicant, including the extended authority theretofore granted in application No. M-6859, supplement 3. The commission indicated in the order that to do otherwise would nullify the order granting the extension, which was predicated on a finding that such service was required by present and future public convenience and necessity, and violate the very purpose for which the applications were filed and hearing was had whereat, after due notice, protestants had appeared and fully presented their objections. The commission's order vacated the order to show cause, cancelled transferor's original certificate, transferred the consolidated authority, and issued a new certificate upon findings that applicant was fit, willing, and able properly to perform the service and conform to the provisions of sections 75-222 to 75-250, R. R. S. 1943, and with the rules and regulations of the commission; and that the proposed acquisition would be consistent with the public interest and would not unduly restrict competition or result in a new or different service or operation as concerns territorial scope.

The record supports, and in fact it is conceded, that applicant was fit, willing, and able to perform the extended service, and we have already affirmatively disposed of the questions of present and future public convenience and necessity, public interest, competition, and type of service as concerns territorial scope. There remain then only the questions of notice and dormancy raised by protestants in this proceeding.

With regard to the question of notice, it is clear of course that notice and hearing is required by section 75-240.02, R. S. Supp., 1955. It is equally clear that In re Application of Richling, 154 Neb. 108, 47 N. W. 2d 413, relied upon by protestants, which involved an ex parte order entered without any notice to interested parties, has no application or controlling force here. In this proceeding protestants actually had notice and subsequently appeared at the hearing wherein their objections were fully presented and considered. To require any further notice and hearing would be a futile gesture. Protestants' contention with regard to want of notice has no merit.

Section 75-238, R. R. S. 1943, provides in part: "Any such * * * certificate may * * * upon complaint or on the commission's own initiative, after notice and hearing, be suspended, changed or revoked in whole or in part, for willful failure to comply with any of the provisions of sections 75-222 to 75-250, or with any lawful order, rule or regulation of the commission promulgated thereunder, or with any term, condition or limitation of such * * * certificate."

This court has held that: "Where there is competent evidence which, if believed, is sufficient to sustain the finding of the railway commission that a willful failure to comply with any lawful order of the commission or with any lawful term, condition, or limitation of a permit or certificate of convenience and necessity issued by it had occurred, an order based on such finding is not unreasonable or arbitrary.

"The term 'willful failure,' as used in section 75-238, R. R. S. 1943, is such behavior through acts of commission or omission which justifies a belief that there was an intent entering into and characterizing the failure complained of." Schmunk v. West Nebraska Express, 159 Neb. 134, 65 N. W. 2d 386. See, also, Abler Transfer Co. v. Lyon, 161 Neb. 378, 73 N. W. 2d 667; In re Application of Resler, 154 Neb. 624, 48 N. W. 2d 718; Union Transfer Co. v. Bee Line Motor Freight, 150 Neb. 280, 34 N. W. 2d 363.

Conversely, by analogy from such authorities, it was not arbitrary and unreasonable for the commission to conclude that transferor's certificate of convenience and necessity was not dormant and had not been abandoned when it was shown by competent evidence, as appears in this case, that the transferor held itself out to render the authorized service, owned and operated adequate motor truck equipment, maintained terminal facilities, solicited business, actually performed satisfactory service in the territory assigned, and had not willfully failed to comply with the provisions of sections 75-222 to 75-250, R. R. S. 1943, or with any lawful order, rule, or regulation of the commission or any term, condition, or limitation of its certificate.

In that regard, protestants argued that the applicant transferor, *as a partnership,* owned no motor truck equipment, performed no services, failed to solicit new business, and did not hold itself out to the public to render service. Such contention has no merit because the certificate to be transferred was not issued to the partnership but was issued to Earl Houk and Frank Woodrow, doing business as Western Transport Service. The trucking equipment was actually owned by the individuals and leased to the partnership with commission approval. The operations were conducted by the individuals under the trade name of Western Transport Service, and the operations, as well as the books and records thereof,

were regularly inspected by officials of the commission who registered no complaint.

Protestants also argued that the operations conducted by transferor were either exempt under the Motor Carrier Act or were movements in interstate commerce. In that respect, a large portion of transferor's services originated at some points in Scottsbluff with destination at some other points in Scottsbluff or vicinity. In such respect, protestants argued that, as provided by section 75-224, R. R. S. 1943, such operations within that city and vicinity were exempt from the operation of sections 75-222 to 75-250, R. R. S. 1943, and, not being required to have a certificate to so operate, it could not be held that applicant transferor had operated pursuant to its certificate. Such contention is not only based upon false logic but also overlooks the fact that transferor had a certificate and thereunder solicited and held itself out to perform service, and, as shown by the record, actually rendered services from Scottsbluff to other points in its destination territory when opportunity was afforded.

On the other hand, a large portion of transferor's service was from Grant lease at Harrisburg, Nebraska, to Enders station, about 10 miles south of Kimball, Nebraska, and from Henshaw lease at Harrisburg to Enders station for the Platte pipe line transmission. Contrary to protestants' contention, the record in this proceeding shows by affirmative testimony that such operations were intrastate, being from points in Nebraska to points in Nebraska, and no authority is cited by protestants which would require a conclusion that they were interstate. In any event, under the circumstances in this record, transferor held an interstate certificate and the result would be the same.

For reasons heretofore stated, we conclude that the order of the commission in docket No. 33883, which vacated the order to show cause and transferred the extended authority to applicant, was not arbitrary and un-

reasonable. It should be and hereby is affirmed, with all costs taxed to protestants.

AFFIRMED.