HERMAN BROTHERS, INC., OF OMAHA, NEBRASKA, APPELLEE, v. HENNIS FREIGHT LINES, INC., OF NEBRASKA, APPELLANT.

220 N. W. 2d 230

Filed July 11, 1974. No. 39198.

Rodney Peake and Marti, Dalton, Bruckner, O'Gara & Keating, for appellant.

Robert A. Skochdopole and Kennedy, Holland, DeLacy & Svoboda, for appellee.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and COLWELL and WARREN, District Judges.

COLWELL, District Judge.

Hennis Freight Lines, Inc., of Nebraska, hereafter called Hennis, appeals from an order of the Nebraska Public Service Commission modifying its authorized service for the irregular route operations under certificate of public convenience and necessity No. M-10634, supplement No. 4, last issued on January 8, 1971, which then provided:

"SERVICE AUTHORIZED: Commodities generally (including perishables requiring refrigeration), except (1) livestock and (2) liquid petroleum products by tank vehicles. ROUTE OR TERRITORY AUTHORIZED: * * * Irregular Route Operations: Between all points in Nebraska over irregular routes."

These proceedings began by the Nebraska Public Service Commission, hereafter called Commission, filing its complaint, No. 1408, against Hennis and issuing an order to show cause on January 28, 1972, pursuant to section 75-315, R. R. S. 1943, alleging in substance that Hennis *willfully abandoned* its *regular route* operations under its certificate and allowed those operations to become *dormant* in violation of section 75-315, R. R. S. 1943.

On October 5, 1972, Herman Brothers, Inc., of Omaha, hereafter called Herman, filed its formal complaint No. 1076 with the Commission pursuant to section 75-315, R. R. S. 1943, alleging that Hennis had *willfully abandoned* its *regular route* operations under its certificate in violation of section 75-315, R. R. S. 1943, and further that Hennis had *willfully abandoned* its *irregular route* operations, particularly, that portion thereof which authorizes it to haul commodities requiring special equipment, and it allowed these operations to become *dormant* in violation of section 75-315, R. R. S. 1943.

Section 75-315, R. R. S. 1943, provides in part: "Any such permit or certificate may, upon application of the holder thereof, in the discretion of the commission, be revoked or may, upon complaint or on the commission's own initiative, after notice and hearing, be suspended, changed or revoked in whole or in part, for willful failure to comply with any of the provisions of sections 75-101 to 75-801, or with any lawful order, rule or regulation of the commission promulgated thereunder, or with any term, condition or limitation of such permit or certificate."

The Rules and Regulations of the Commission alleged to have been violated are: Motor Carriers, Chapter III, Article 1, Section 1.2, "Unauthorized Operations. No carrier, without first obtaining Commission approval shall (a) fail to operate over its entire certificated route, (b) discontinue in any part service authorized, * * *."

Although the Herman complaint uses the language "willfully abandoned" and dormant" it is clear the parties understood that Herman had the burden to prove its complaint in the statutory terms of "willful failure." The parties agree that the main issue was the authority of Hennis to transport cement in bulk over irregular routes in Nebraska, which service requires special equipment.

The two complaints were consolidated for trial. In summary, the evidence was that Hennis is related to a

parent corporation, Hennis Freight Lines, Inc., of Winston-Salem, North Carolina. They have a mutual main office, terminal and loading dock in Omaha, Nebraska, where both interstate and intrastate operations are conducted. Their mutual terminal in Lincoln, Nebraska, was closed and not used at some time subsequent to January 7, 1971. Hennis has failed to continue and serve its regular route service west of Lincoln, Nebraska. Their employees, trucks, equipment, and facilities are used by both corporate owners. Hennis leases some trucks from Hennis Freight Lines, Inc. Hennis has 15 employees, 5 straight trucks owned or leased, and it has other equipment and facilities available to perform the services required in its irregular route certificate. Hennis owned no special equipment to haul cement either in bulk or in bag. It did have a lease contract with Ruan Transport, Inc., Omaha, Nebraska, to lease special equipment from Ruan to haul bulk cement. This leased equipment included 13 tractors and 27 trailers. The lease was filed and conditionally approved by the Commission on August 16, 1972. The special equipment was available on call; however, it was physically maintained in the Ruan Omaha yard, and Hennis failed to issue a receipt to Ruan for possession of the leased equipment as provided in Commission Rules, Motor Carriers, Chapter III, Article 7, Sections 2.1(f) and 2.2. Hennis used the Ruan leased equipment on October 10 and 11, 1972, for four separate cement shipments, receiving a net sum of $5 for each load hauled as provided in the lease contract. There is no evidence of any other cement hauling service by Hennis, or a request of Hennis for such service. Hennis kept its insurance premiums in force on all equipment, trucks, and personnel. It obtained such "R.C." plates as required by the Commission as necessary for the trucks owned and leased by it; and it conducted a limited general advertising program through truck directories,

telephone directories, free telephone call service, scratch pad and match cover advertising, and through sales personnel. After the Herman complaint was filed Hennis conducted a limited direct mail circular advertising campaign soliciting cement business. Hennis represented itself to the general public as being a motor carrier offering service pursuant to its certificate. Its advertising made no particular reference to either irregular routes or regular routes. All customer requests for irregular route service tendered to Hennis were satisfied and performed, and at the time of the hearing Hennis was providing the same service under its irregular route certificate as it provided when the certificate was last issued on January 8, 1971. Since 1966, Herman has been one of the two recognized leaders in the field of hauling cement in both bulk and bag from the three main Nebraska sources located at Omaha, Louisville, and Superior, Nebraska. Herman's equipment includes 182 Pneumatic semi-trailers, 25 flatbed trucks for bag cement, 31 cement storage siloes, 18 pumpers, and 288 motor tractors. Its equipment investment is sizeable.

The order of the Commission was entered on May 14, 1973; it modified the regular route operations of Hennis from which no appeal was taken; the order also modified the irregular route operations of Hennis as follows:

"SERVICE AUTHORIZED: Commodities generally, except those requiring special equipment.

"ROUTE OR TERRITORY AUTHORIZED: * * * Irregular Route Operations: Between all points in Nebraska, over irregular routes."

A part of the Commission's findings include: "The primary issue for determination in the Formal Complaint No. 1076 is whether or not the Defendant has *willfully abandoned* his irregular route operations, and in particular that portion thereof which authorizes the

Defendant to haul commodities generally requiring special equipment. * * * The record is devoid of any evidence indicating that the Defendant, Hennis Freight Lines, Inc. of Nebraska, performed any operations which required the use of 'special equipment' until after the Formal Complaint was filed. * * * 'Willful failure' has been defined by the Nebraska Supreme Court in the case of Union Transfer Co. v. Bee Line Motor Freight, 150 Nebr. at 284 (1948) as follows: * * * 'Willful failure as used in Section 75-238, R. S. 1943 (since revised), is such behavior through acts of commission or omission which justifies a belief that there was an intent entering into and characterizing the failure complained of: A failure to perform an act for a long period of time, which is required by law to be performed, generally constitutes a willful failure to perform.' * * * *the Defendant was required to conduct operations hauling commodities which require special equipment and failed to perform said services for a long period of time, and this constitutes a willful failure to perform.* That portion of the Defendant's authority which authorizes the transporting of commodities, which requires special equipment over irregular routes in the State of Nebraska is found to be *dormant."* (Emphasis supplied.)

The issues here are limited to the strict application of section 75-315, R. R. S. 1943, to an existing irregular route certificate without the usual coordinate proceedings of a certificate holder's application to alter a route or service, or for the sale, transfer, lease, or consolidation of properties and certificates under section 75-318, R. R. S. 1943. We consider the first assignment of error, that the Commission erred in finding that Hennis willfully failed to comply with the Nebraska statutes and the Rules of the Commission.

"On an appeal to the Supreme Court from an order of the Nebraska State Railway Commission, adminis-

trative or legislative in character, the only questions to be determined are whether the commission acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made. * * * The prime object and real purpose of Nebraska State Railway Commission control is to secure adequate sustained service for the public at minimum cost and to protect and conserve investments already made for that purpose, and in doing so primary consideration must be given to the public rather than to individuals." Houk v. Peake, 162 Neb. 717, 77 N. W. 2d 310. See, also, § 75-301, R. R. S. 1943.

The Commission's Rules, Motor Carriers, Chapter III, Article 2, Section 2.4(c), provides in part: "Irregular route operations. Irregular route operations are characterized by: (1) Operations conducted strictly on a call and demand basis, (2) The movement of truckload lots or other substantial shipments, * * *."

"The Nebraska State Railway Commission is without power to revoke a certificate of convenience and necessity in the absence of evidence of a willful failure of the holder thereof to observe and comply with the Motor Carrier Act or any lawful order or regulation of the commission or any term, condition, or limitation of the certificate." Caudill v. Lysinger, 161 Neb. 235, 72 N. W. 2d 684.

The term "willful failure" as used in the statute giving the Nebraska Public Service Commission jurisdiction and authority to suspend, change, or revoke a certificate of public convenience and necessity for failure to comply with the provisions of the Motor Carrier Act is such behavior through acts of commission or omission which justifies a belief that there was an intent entered into and characterizing the failure complained of. Schmunk v. West Nebraska Express, Inc., 159 Neb. 134, 65 N. W. 2d 386.

Although the Commission in its order did correctly

quote from Union Transfer Co. v. Bee Line Motor Freight, 150 Neb. 280, 34 N. W. 2d 363, its definition of "willful failure" as applied to this case was in error.

The violation by Hennis of Commission Rules as to the possession of leased trucks was not a part of the Commission findings and it is not presented here. A violation of a Commission Rule is not of itself a willful failure. See In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d 418.

Hennis has continued to generally conduct its irregular route business in the same manner as existed at the time the certificate was last issued on January 8, 1971. It held itself out to render the authorized service; it owned, leased, and operated adequate terminal facilities and motor truck equipment, including special bulk cement equipment; it solicited business and performed satisfactory service in the territory assigned; it served all business tendered; and all insurance coverage and "R.C." permits required were obtained. Hennis was required to do no more. There was a paucity of bulk cement hauling business. There is no question that Herman established by the evidence that Hennis was an ineffective competitor for the bulk cement hauling business, but this does not meet the test of willful failure under section 75-315, R. R. S. 1943, as applied to this proceeding.

The order of the Commission was unreasonable and arbitrary and is reversed with directions to dismiss the Herman complaint No. 1076 at Herman's costs and to reinstate the Hennis certificate No. M-10634, supplement No. 4, for the irregular route service authorized as of January 8, 1971.

REVERSED WITH DIRECTIONS.