IN RE APPLICATION OF GREYHOUND LINES, INC.
AMERICAN BUS LINES, INC., DOING BUSINESS AS
TRAILWAYS, INC., APPELLANT, V.
GREYHOUND LINES, INC., APPELLEE.

308 N.W.2d 336

Filed July 10, 1981.    No. 43457.

Lavern R. Holdeman of Peterson, Bowman & Johanns for appellant.

James E. Ryan of Ryan & Williams, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

This is an appeal from an order of the Nebraska Public Service Commission granting an application filed by Greyhound Lines, Inc., for authority to operate as a common carrier by motor vehicle, over regular routes, transporting passengers, baggage, mail, express, and newspapers in the same vehicle with passengers between Lincoln, Nebraska, and Grand Island, Nebraska, serving no intermediate points, via Interstate 80. Grand Island, Nebraska, is approximately 100 miles west of Lincoln, Nebraska.

A protest was filed by American Bus Lines, Inc., doing business as Trailways, Inc., which has authority to operate over the same route. No other protest to the application was filed. After 6 days of hearings on the application in Lincoln and Grand Island, the commission concluded, with one commissioner dissenting, that the application of Greyhound should be granted. Trailways appeals from that order.

The protestant holds authority to operate over U.S. Highway 34 between Lincoln and Grand Island, serving all intermediate points. The applicant holds authority to operate over U.S. Highways 30 and 30A between Omaha and Grand Island, and also over U.S. Highway 6 between Omaha and Lincoln. In 1962 the applicant applied for authority to operate between Lincoln and Grand Island serving no intermediate points. The authority was granted by the commission but upon appeal to this court the order was reversed. See *The Greyhound Corp. v. American Buslines Inc.*, 178 Neb. 9, 131 N.W.2d 664 (1964).

Since the applicant is authorized to operate over Interstate 80 as an alternate route, it now operates buses through Omaha to Lincoln, Grand Island, and points west, and also in the opposite direction, but without authority to convey passengers to Lincoln from

the west, or from Lincoln to the west. This "closed door" service requires eastbound passengers from Grand Island to travel to Omaha and then return to Lincoln if they wish to use the applicant's service to Lincoln. Westbound passengers must first travel to Omaha and then return to Lincoln in order to use the applicant's service to Grand Island. The same restrictions apply to the applicant's express package service between Lincoln and Grand Island.

In *Black Hills Stage Lines, Inc. v Greyhound Corp.*, 174 Neb. 425, 118 N.W.2d 498 (1962), it was noted that a closed door passenger operation is difficult for waiting passengers to understand and may at times result in wasteful transportation. That circumstance is present in this case because the applicant is already providing the service but the "closed door" restriction prevents the public from using the service without traveling to or from Omaha in order to use the applicant's service between Lincoln and Grand Island. As the assistant director of traffic for Greyhound stated: "The crux of Greyhound's proposal, and the purpose of this entire application, is simply to allow Greyhound to serve Lincoln, Ne. as an intermediate point stop on its operations over Interstate Highway 80. Greyhound simply wants to open its doors to provide service to Lincoln, Ne." An application for the type of certificate involved in this case is governed by Neb. Rev. Stat. § 75-311 (Reissue 1976), which provides: "A certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found after notice and hearing *that the applicant is fit, willing, and able properly to perform the service proposed,* and to conform to the provisions of sections 75-301 to 75-322.01 and the requirements, rules, and regulations of the commission thereunder and that the proposed service, to the extent to be authorized by the certificate, whether regular or irregular, passenger or property, *is or will be required by the present or future public convenience and necessity;* other-

wise such application shall be denied." (Emphasis supplied.)

The burden is on the applicant for a certificate to show he has met all the requirements of § 75-311. See *The Greyhound Corp. v. American Buslines Inc., supra.*

Upon an appeal from an order of the commission granting a certificate, this court may decide only whether the commission acted within the scope of its authority and whether the order in question was reasonable and not arbitrarily made. *Wells Fargo Armored Service Corp. v. Bankers Dispatch Corp.*, 186 Neb. 261, 182 N.W.2d 648 (1971). This court will not disturb an order of the commission based on evidence unless the evidence shows that the order was unreasonable or arbitrary. *The Greyhound Corp. v. American Buslines Inc., supra; Preisendorf Transp., Inc. v. Herman Bros., Inc.*, 169 Neb. 693, 100 N.W.2d 865 (1960).

The record shows that the applicant Greyhound proposes to operate 3 eastbound and 2 westbound schedules daily over Interstate 80 between Grand Island and Lincoln. The buses on this route are all air-conditioned and lavatory-equipped. Terminal facilities and commission agents are already present in the areas involved in the application. All Greyhound buses now operating through Lincoln have excess capacity to accommodate additional passengers. Financial information provided by the company shows it is financially fit, willing, and able to perform the service applied for.

The evidence clearly supports the commission's finding that Greyhound was fit, willing, and able to perform the proposed service. The appellant Trailways attacks the commission's finding that the certificate "is or will be required by the present or future public convenience and necessity." "This court has consistently held: 'In determining the issue of public convenience and necessity, controlling questions are whether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by ap-

plicant in a specified manner without endangering or impairing the operations of existing carriers contrary to public interest.' Miller v. Consolidated Motor Freight, Inc., 168 Neb. 712, 97 N.W.2d 265. See, also, Houk v. Peake, 162 Neb. 717, 77 N.W.2d 310; Basin Truck Co. v. R.B. 'Dick' Wilson, Inc., 166 Neb. 665, 90 N.W.2d 268." *Black Hills Stage Lines, Inc., v. Greyhound Corp.*, 174 Neb. 425, 429, 118 N.W.2d 498, 500-01 (1962).

More than 50 public witnesses testified in support of Greyhound's application, taking up over 600 pages of the record. The witnesses included representatives of local government subdivisions in the affected area, chamber of commerce representatives, officials from the universities, businessmen engaged in package delivery, retired citizens' organizations, and private individuals. While much of the testimony was repetitive, the consensus of the witnesses' testimony described Trailways' service as inadequate with regard to its schedules. Most of the witnesses cited a need for more and better schedules and service.

The package express shippers generally expressed a dissatisfaction with the lack of daytime schedules on Trailways. One shipper went so far as to describe the present service as "no bus service at all." Incidental complaints were also registered with regard to the failure to notify customers on the arrival of packages.

The lack of daytime schedules was cited by individuals who used Trailways to travel to western Nebraska to visit relatives, or return on visits from school. The facilities of Trailways in many cities are closed during most of the scheduled stops. No witness appeared in opposition to the application other than the area operations manager for Trailways.

The evidence before the commission indicated a marked reduction by Trailways in schedules between Lincoln and Grand Island since 1962. At the time of the hearing, Trailways' Lincoln to Grand Island service departed Lincoln at 5:20 p.m. and 11:15 p.m., and arrived

in Grand Island at 7:45 p.m. and 1:10 a.m., respectively. From Grand Island, Trailways buses departed at 5:25 a.m. and 7:05 p.m., and arrived in Lincoln at 7:35 a.m. and 9:20 p.m., respectively. These schedules were part of Trailways' transcontinental system which serves major markets on the east and west coasts. Two of Greyhound's proposed schedules between Lincoln and Grand Island would provide daytime service.

The Greyhound representative testified there would be no significant impact on Greyhound's "northern" route if the application for service to Lincoln over Interstate 80 was granted.

The Trailways' operations witness noted that Trailways was not a profitable operation over the route covered by the application. The witness estimated that if the Greyhound application was granted, $84,000 in revenue would be diverted to Greyhound from Trailways.

The "closed door" restriction which applied to Greyhound's interstate service to Lincoln was suspended by the Interstate Commerce Commission in 1979 for 90 days ending September 25. Trailways' operations witness was unable to provide evidence of a significant diversion of traffic from Trailways to Greyhound as a result of the lifting of the restriction during suspension.

The commission, while noting that some revenue diversion would result from its order granting the application, found that it would not impair Trailways' operations contrary to the public interest. The commission found a public need for additional bus schedules, as provided for in Greyhound's application. In granting the application, the commission described the history of Trailways' deteriorated schedule as "tantamount to an abandonment of service by Trailways over that route."

In considering a determination of the public convenience and necessity, the utility of a "closed door" policy and the value of a competitive market to the public must be considered. This court has noted: "'The purpose of the Nebraska Motor Carrier Act was regulation

for the public interest. Its purpose was not to stifle legitimate competition but to foster it. Its purpose was not to create monopolies in the transportation industry but to eliminate discrimination, undue preferences or advantages, and unfair or destructive competitive practices. Legitimate competition is a normal attribute of our free enterprise system. It must be permitted to exist and the law contemplates that it shall.'" *Shanks v. Watson Bros. Van Lines*, 173 Neb. 829, 833, 115 N.W.2d 441, 444-45 (1962); *Black Hills Stage Lines, Inc. v. Greyhound Corp.*, 174 Neb. 425, 118 N.W.2d 498 (1962).

Trailways argues that this court's decision in *The Greyhound Corp. v. American Buslines Inc.*, *supra*, should control this appeal. In that case, however, we noted there was no substantial showing of insufficiency of capacity or lack in quality of service by American, and that the evidence disclosed preponderantly that the facilities of American were good and the operating conditions satisfactory.

The commission, in its order, distinguished that earlier decision when it found a lack of quality service by Trailways and operational facilities that were not good. The finding of the commission in this regard is supported by the record.

The evidence in this case shows that the authority applied for will serve a useful purpose that is responsive to a public demand and need. It also shows that the service will not be adequately performed by the existing carrier in the area. The determination as to whether the service to be performed by the applicant would endanger or impair the operations of the existing carrier contrary to the public interest was an issue peculiarly for the commission. *Black Hills Stage Lines, Inc. v. Greyhound Corp.*, *supra*. It was the duty of the commission to weigh the need for new service and the detriment to accrue to the existing carrier, and to determine what was consistent with the public interest.

The determination of the public interest is one that is peculiarly for the determination of the commission. If

there is evidence to sustain the finding of the commission, this court cannot intervene. It is only where the findings of the commission are against all the evidence that this court may hold that the commission's finding on the evidence is arbitrary and capricious. *Neylon v. Petersen & Petersen, Inc.*, 181 Neb. 143, 147 N.W.2d 488 (1966).

The findings of the commission are supported by the record and its order must be affirmed.

AFFIRMED.