IN RE APPLICATION OF REGENCY LIMO, INC.
REGENCY LIMO, INC., APPELLEE, V. CELEBRITY LIMOUSINE
SERVICE AND OLD MARKET LIMOUSINE SERVICE, INC.,
APPELLANTS.

386 N.W.2d 444

Filed May 2, 1986.    No. 85-882.

Marshall D. Becker, for appellants.

Bruce C. Rohde and David H. Roe of McGrath, North, O'Malley & Kratz, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

The Nebraska Public Service Commission granted the applicant-appellee, Regency Limo, Inc., a corporation, authority to operate as a common carrier for the purpose of transporting "passengers by stretch limousines or other luxury type automobiles between points in the Omaha Metropolitan area and between points in Omaha, on the one hand, and, on the other hand, points in Nebraska over irregular routes." The protestants-appellants, Celebrity Limousine Service and Old Market Limousine Service, Inc., which hold authority for

similar service in the Omaha area, appeal and assign as error, among others, the commission's findings that the proposed service is or will be required by the present or future public convenience and necessity. That assignment being meritorious, we reverse.

Regency proposes to rent its single well-equipped 1985 Lincoln Continental stretch limousine at $45 per hour for a minimum of 2 hours to nonsmokers only. It is its intention to promote its business by personally soliciting, through its sole stockholder and director, businesses which have not used limousines in the past and persuade them to do so in the future. It is of the opinion that the newness, equipment, and extra length of its vehicle justify the $10 more per hour it intends to charge than do the other existing Omaha limousine services. Regency presented no documentation in support of its statement that its market research led to the conclusion there was a need for the service it proposes. By Regency's own admission, however, its research was not thorough enough to reveal that it needed a certificate of public convenience and necessity from the commission to engage in its proposed business.

Regency presented three witnesses in support of its application, all from Omaha, notwithstanding its statement that the majority of its business would come from areas other than that city. One of these witnesses, who is the leasing agent for premises occupied by Regency's stockholder, admitted that it had "been a while" since he purchased limousine services, but he had ridden in Omaha limousines provided to him by others during the 6 months preceding the hearing before the commission. He stated those services "did a good job." Nonetheless, he is impressed with the newness and quality of Regency's limousine and testified there are "a couple of occasions" when he is certain he would use Regency's services.

The second witness operates an air charter service and has rarely purchased limousine services in the past. He had never been solicited before by a limousine service; however, Regency's presentation has persuaded him to use limousines in the future. If Regency is not successful in its application, he would listen to other providers of the service.

The third witness is also involved in an air transport service, as well as being president of another business. He has never hired a limousine service but has concluded that his air transport service would have some use for such, although he did not know how extensively. There might be as many as "a dozen occasions in which we could *potentially* be a user." (Emphasis supplied.) He has ridden in Omaha limousines at the expense of others and thought those limousines "were pretty bad." He did not, however, know who owned them.

The evidence of the protestants establishes that Omaha, with a population of 569,614, has eight limousine services. The ratio of limousine services to population in other cities is as follows:

| Cities | Population | Number of Limousine Services |
|--------|-----------|------------------------------|
| Jacksonville, FL | 737,541 | Nine |
| Grand Rapids, MI | 601,680 | Three |
| Spartanburg, SC | 569,066 | Three |
| Youngstown, OH | 531,350 | Four |
| Fresno, CA | 514,621 | Eight |
| Wichita, KS | 411,313 | Two |
| Des Moines, IA | 338,048 | Four |

There is no city in the foregoing comparison of a population similar to that of Omaha which has more limousine services than it does, and two which have less than half that number. While a comparison of the number of limousines available for hire in each city would have been more helpful, the foregoing comparison, standing without contradiction, is nonetheless some evidence that Omaha is not lacking in limousine services.

The two protestants together have 15 limousines which were manufactured from 1973 through 1984 and include a 1984 and a 1983 stretch Lincoln limousine which, although 17 inches shorter than Regency's limousine, are well equipped. Each of the protestants testified it is difficult to utilize all of its limousines. One of the protestants testified that the vast majority of its business is transporting visiting entertainers, some of which is done with the very same individual whose

business Regency said it expected to obtain.

Neb. Rev. Stat. § 75-311 (Reissue 1981) provides in pertinent part: "A certificate shall be issued . . . if . . . required by the present or future public convenience and necessity; otherwise such application shall be denied."

We have held that the determination of the public convenience and necessity is a matter peculiarly within the discretion and expertise of the commission. *In re Application of Red Carpet Limo. Serv., Inc.*, 221 Neb. 340, 377 N.W.2d 91 (1985). *Red Carpet* reaffirmed that our standard of review on an appeal from an order of the commission granting a certificate is limited to determining whether the commission acted within the scope of its authority and whether the order in question was reasonable and not arbitrarily made.

The only question present in this case is whether the commission's order is unreasonable and thus arbitrary.

The controlling questions in making that determination, as again reaffirmed in *In re Application of Red Carpet Limo. Serv., Inc., supra*, are whether the proposed operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether the purpose can be served by the applicant in a specified manner without endangering or impairing the operations of existing carriers contrary to the public interest.

The evidence in this case, as a matter of law, falls short of supporting the commission's order. The evidence simply does not rise to the level of showing that the proposed operation will serve a useful purpose responsive to a public demand or need, nor that this purpose cannot or will not be served as well by the existing carriers.

In view of the foregoing determination it is unnecessary to address the protestants' other assignments of error.

Accordingly, the order of the commission is reversed.

REVERSED.

WHITE, J., dissenting.

Neb. Rev. Stat. § 75-311 (Reissue 1981) provides that an applicant for a certificate of public convenience and necessity bears the burden of showing that the authority it seeks is required by the public convenience and necessity. *In re*

*Application of Red Carpet Limo. Serv., Inc.*, 221 Neb. 340, 377 N.W.2d 91 (1985). We have defined public convenience and necessity to include: whether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether this purpose can be served by the applicant in a specified manner without endangering or impairing the operations of existing carriers contrary to the public interest. *In re Application of Greyhound Lines, Inc.*, 209 Neb. 430, 308 N.W.2d 336 (1981).

The determination of the issue of public convenience and necessity is peculiarly within the discretion and expertise of the Public Service Commission. *Red Carpet Limo. Serv., Inc., supra*. As the majority recognizes, the standard of review in this court for cases of this kind is well established. Upon an appeal from an order of the commission granting a certificate, this court decides only whether the commission acted within the scope of its authority and whether the order in question was reasonable and not arbitrary. As we stated in *Red Carpet Limo. Serv., Inc., supra* at 342, 377 N.W.2d at 93: "If there is evidence to sustain the finding of the commission, this court cannot intervene. *It is only where the findings of the commission are against all the evidence that this court may hold that the commission's finding on the evidence is arbitrary*." (Emphasis supplied.)

The evidence presented to the commission in this case met all the requirements for a certificate of public convenience and necessity. First, Regency Limo presented evidence that its proposed operation would serve a useful purpose responsive to a public demand or need. Regency Limo, Inc., proposed to provide round-the-clock luxury limousine services to celebrities, dignitaries, and businesspersons visiting Omaha and points outside the city. This is unlike the situation in *Red Carpet Limo. Serv., Inc.*, where the applicant's proposed services would have provided limousine transportation from the Omaha airport to points in the city, such services being identical to those already offered by Omaha taxi and limousine companies. Regency's president and sole stockholder testified that he and his financial backers perceived the need for a

more personalized and luxurious limousine service after entertainers visiting Omaha complained to them about the quality of existing limousine services. After further investigation into the feasibility of the venture, Regency concluded that a clientele existed for the type of service it proposed.

Regency subsequently purchased a 1985 Lincoln "stretch" limousine, complete with color television, stereo, VCR, telephone, and intercom. In the record the protestants conceded that Regency's limousine was superior to theirs in features and luxurious appointments which presumably would appeal to the clientele Regency believed existed and hoped to attract.

Regency also demonstrated to the commission that its proposed services could not be offered by existing limousine services. As noted earlier, the protestants acknowledged the superiority of Regency's "stretch" limousine, a type of vehicle which no other Omaha-based limousine service currently owned or operated at the time Regency made its application. Without major expenditures for new and better-equipped vehicles (Regency testified that its stretch Lincoln cost $48,000), existing limousine services did not have the capability to serve the limited clientele to which Regency's services were to be directed.

Finally, the fact that Regency met the first two requirements for a certificate of public convenience perforce establishes that it met the third requirement—that is, Regency's purpose could be served in a specified manner without endangering or impairing the operations of existing carriers contrary to the public interest. The protestants conceded that they were not currently engaged in the type of business Regency proposed, in part because they lacked the luxurious vehicles needed for such an offering. That the protestants may have in the future been willing to expand their services to accommodate Regency's targeted clientele does not establish that their existing services would somehow be harmed by Regency's proposed offering. The simple fact is Regency developed an innovative marketing concept in the limousine service field that the other carriers had not considered. The commission's granting of a certificate of public convenience and necessity to Regency Limo should have

been affirmed.

Boslaugh, J., joins in this dissent.